[File No. Cr. 244]

STATE OF NORTH DAKOTA, Respondent v. N. CLARENCE
TORZESKI, Appellant.

(54 NW2d 879)

Opinion filed September 25, 1952

*Milton K. Higgins,* for appellant.

*E. T. Christianson,* Attorney General, and *George S. Register,* State's Attorney, for respondent.

CHRISTIANSON, J. The defendant was convicted in the District Court of Burleigh County of the crime of embezzlement and sentenced to imprisonment in the penitentiary. Defendant has appealed from the judgment of conviction. On such appeal errors are assigned upon the rulings on the admission of evidence and upon the court's instructions to the jury. No specifications of the insufficiency of the evidence were served or filed.

In the information it was charged that the defendant committed the crime of embezzlement in Burleigh County, North Dakota. That at the time and place stated the defendant, being then and there an agent of Harry O. Berg and having in his control property, to-wit: $150.00 good and lawful money of the United States of America for the use of said Harry O. Berg, fraudulently appropriated the said property to his own personal use and purpose, and not in the due and lawful execution of his trust. That the circumstances of the embezzlement were that said $150.00 were the proceeds of a certain check drawn and issued by Elmer Shira, payable to the order of Nick Torzeski, the defendant, for the sum of $150.00 drawn on the State Bank of Burleigh County and delivered by said Elmer Shira to said defendant for the use of said Harry O. Berg and which said check was duly cashed by said defendant and said proceeds fraudulently appropriated to the fraudulent use and purpose of said defendant and not in the due and lawful execution of his trust as aforesaid; and that at the time involved the said defendant was an agent of said Harry O. Berg.

The statutes of this state provide:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." Section 12–3601, NDRC 1943.

"Upon any prosecution for embezzlement it is a sufficient defense that the property was appropriated openly and avowedly and under a claim of title preferred in good faith even though such claim is untenable. This provision shall not excuse the

retention of the property of another to offset or pay a demand held. against him." Section 12–3614, NDRC 1943.

The defendant requested that the court give the following instruction:

"There can be no conviction of embezzlement, unless there was a criminal intent at the time, on the part of the defendant; and, that if the defendant believed he was entitled to use the money, no matter how groundless you may find that belief was, yet he cannot be convicted of embezzlement if you have a reasonable doubt as to whether or not he believed he was entitled to use it."

The court endorsed upon the request the word "Given" and affixed his signature below. . The instructions given to the jurors by the court must be filed with the clerk and need not be embodied in the statement of the case, but the same and each of them, with the endorsements, if any, showing the action of the court thereon, form a part of the record of the action. Section 29–2305, NDRC 1943. The instructions in this case were in writing and such instructions, together with the instructions requested by counsel showing the action of the court thereon, were transmitted to this court as a part of the record on appeal.

The defendant predicates error upon the following instruction:

"You are instructed, Members of the Jury, that there can be no conviction of embezzlement unless there was a criminal intent at the time on the part of the defendant; and, that if the defendant believed he was entitled to use the money, no matter how groundless you may find that belief was, yet he cannot be convicted of embezzlement if you have a reasonable doubt as to whether or not you believe he was entitled to use it; that is, in the event you find and determine that the defendant intended in good faith to borrow the money from Elmer Shira, and was at the time not engaged as the agent or employer of his principal, or in his principal's business, you would find the defendant not guilty."

The transcript of the evidence shows that during the times involved in this controversy one Harry O. Berg was the pro-

prietor and sole owner of a concern known as Berg Insulation Company. The name was later changed to Berg Home Improvement. From May 1948 to November 8, 1948, the defendant Torzeski was employed by Berg, under an oral agreement, as a salesman to take orders for insulation of houses. The defendant was furnished with forms of the company on which the terms of an agreement for the insulation of houses were stated. In May 1948 the defendant, in the course of his employment, procured an order from one Shira for the insulation of his farm residence at the agreed price of $198.00. No down payment was made and when the insulation crew went to examine the building it was found that the bracing was too weak to permit the work to be done and the order was canceled and no arrangement was made to do the work at a later time. On September 30, 1948, the defendant again contacted Shira and secured another order from him for the insulation of his dwelling, for which Shira agreed to pay $198.00. A down payment of $48.00 was made by check, payable to the defendant Torzeski. The order contained the provision: "Will notify when ready." On November 8, 1948, a written agreement was entered into between Berg, the employer, and the defendant covering their relations. Under the terms of the agreement the defendant was employed as a salesman of insulation jobs on a commission basis and it was agreed that he should receive a specified commission of the gross amount paid for insulation jobs. The territory fixed was the states of North Dakota and South Dakota. The agreement provided:

"At the time of the taking of such orders for insulation by the said salesman, he shall secure a down payment which said down payment shall be applied by the employer on the commission herein provided for. It is agreed however, that all collections of commissions shall be in the name of the employer, and paid over to the employer, who shall then immediately pay to the salesman such commissions as are then due. It is agreed that the said salesman now is indebted to the employer in the sum of $527.55 on previous transactions, and that until such indebtedness is paid, the employer shall be authorized to with-

hold 50% of the commissions due the salesman to apply on such indebtedness."

Mr. Shira testified that on or about September 30, 1948, the defendant prepared an order for the insulation of his house and that he signed the order and gave the defendant a check for $48.00 as an advance or down payment. The order was introduced in evidence and it recited such advance payment and further recited a balance of $150.00 to be paid upon completion of the job. It also contained a provision written on the order: "Will notify when ready." Shira testified that about a week before January 10, 1949, the defendant came to his farm and brought with him a $500.00 note signed by himself payable to Shira and that he wanted to borrow that sum from Shira. Shira testified he told defendant he was not a banker and didn't have so much money; that a short time later defendant came out to his place and that at that time Shira loaned him $50.00; that on January 10, 1949, defendant came to see him and requested payment of the $150.00 balance due on the order for insulation and that Shira gave him his check for that amount, which check was payable to the order of the defendant and which check was later cashed. Shira denied that there was any arrangement whereby the $150.00 paid was to be a loan to the defendant but that, on the contrary, it was to be delivered to Berg in payment of the balance to be paid on completion of the job under the order for insulation. As to what took place at the time Shira executed and delivered the $150.00 check to the defendant, the defendant testified:

"I had been negotiating a loan with Mr. Shira, and I had went out to see him about further negotiating the loan, and he had refused it, but he had made the suggestion that he would pay me for the insulation job in full, and it was understood that I would use that money as he wasn't ready for his job for a month or two anyway, because his house was not in condition, so I wrote up the order, and marked it paid in full, and it was understood that I would use that money for my own purpose until the time that he was ready for the job, then at that time I would pay Mr. Berg when the job was ready to be put in.

"Q. Now, you state that this was a loan; what did Shira say in that regard?

"A. Well, he said, 'I can't let you have the $500,' but he said, 'If this will help you, I will pay you for the insulation job in advance'; and I don't know exactly how it was stated, but it was understood that I would use that money as he wouldn't be ready for the job for a month or two, and when he was ready for the job then I would see that the job was paid for and put in.

"Q. Have you ever refused payment of this money to any one?

"A. No, sir; I have asked Mr. Shira three or four times if he was ready for the job, I wanted to put it in for him, and he has always said he wasn't ready. I didn't know anything until I was arrested.

"Q. Then, when you took this $150, you took—in what capacity did you take that?

"A. I took it as a loan; he couldn't loan me the $500, he said, and I hadn't even thought about doing it that way, but it was his suggestion that he pay me in advance because I had never collected in advance before, and that is the reason I had done it this time.

"Q. Did his suggestion lead you to believe that you would have the use of that money until such time as Berg would have it coming?

"A. Yes, sir; he said he wouldn't be ready for a month or longer.

"Q. And then, what did you do on January 10, 1949?

"A. I was still negotiating with him. I believe I had the note that night . . . yes, I had it, and probably he had reconsidered, and at his suggestion———

"Q. Just state what was said by each one of you as near as you can recall it.

"A. Well, as near as I can recall, I had the note with me; I still wanted the $500, but he said that he didn't have that kind of money, but he would pay me for the insulation job in advance so that I could have the $150 if that would help me to use until he was ready to put in the insulation.

"A. He said he will pay us for the insulation job in advance, and, 'you can use that; I will be ready for the job in a month or

so and when I am ready, you can see that the job is put in and paid for.'

"Q. Did Mr. Shira at that time understand that you were entitled to this whole $150 balance?

"A. He was giving it to me to help me out as a loan.

"Q. He was giving it to you to help you out, as a loan?

"A. Yes."

According to this testimony Shira proposed that he would pay the $150.00 to the defendant for his personal use, with the understanding that the defendant in turn would repay the loan by seeing to it that the insulation was installed when Shira was ready to have it installed and then pay Berg the $150.00 balance on the order for installation of insulation. It is true Shira denies that this arrangement was made. But whether the arrangement was made and whether the defendant kept and utilized the money in the good faith belief that he had a right to so retain and use it was in any event a matter for the jury to determine. To constitute embezzlement there must be a fraudulent intent to deprive the owner of his property and appropriate the same. 29 CJS p 687; Note 41 LRA NS 556; Note 87 Am St Rep p 26 et seq; People v. Heilemann, 362 Ill 322, 199 NE 792; State v. Schmidt, 72 ND at p 732, 10 NW2d at p 876. If the defendant honestly believed that he had a right to retain and use the money personally, and that he did so retain and use the money, then he was not guilty of embezzlement even though his claim of right to so do was untenable. The defense of good faith is not dependent upon the validity of the claim of title to retain the moneys by the party charged with the embezzlement. Under the statute it "is sufficient defense that the property was appropriated openly and avowedly and under a claim of title preferred in good faith even though such claim is untenable." NDRC 1943, Sec. 12–3614.

The instruction set forth above which the defendant requested be "given" to the jury and which the court approved was predicated upon said NDRC 1943, Sec 12–3614, but the instruction was not given in the form requested. It was materially different. The requested instruction was that "if the defendant believed

he was entitled to use the money, no matter how groundless you may find that belief was, yet he cannot be convicted of embezzlement if you have a reasonable doubt as to whether or not *he* believed he was entitled to use it." This part of the instruction as given by the court read as follows: "if the defendant believed he was entitled to use the money, no matter how groundless you may find that belief was, yet he cannot be convicted of embezzlement if you have a reasonable doubt as to whether or not *you* believe he was entitled to use it." (Italics supplied) The court followed this by the following explanatory statement: "That is in the event you find and determine that the Defendant intended in good faith to borrow the money from Elmer Shira, and was at the time not engaged as the agent or employer of his principal, or in his principal's business, you are to find the Defendant not guilty." It made the defense of the defendant that he received and used the money in good faith in the belief that it was given to him by Shira as a loan to the defendant personally applicable only in the event the jury found that at the time he received the money and used it he was not engaged as the agent or employee of his principal or in his principal's business. The effect of the part of the instruction last quoted was to deprive the defendant of the defense authorized by NDRC 1943, 12–3614. Under our laws, every person accused of crime is entitled to a fair trial according to the principles embodied in the Constitution and the laws of this state. The test is not whether certain legal forms have been literally complied with but whether anything has been done or left undone which prejudices the substantial rights of the accused. If a substantial right has been prejudiced a new trial should be had. State v. Schmidt, 72 ND 719, 734, 10 NW2d 868. In this case it cannot be said that the substantial rights of the defendant were not prejudiced by the instruction that was given. Inasmuch as the error in the instructions to the jury requires a reversal other errors assigned need not be considered as the questions raised by such assignments are not likely to arise on another trial.

The judgment of the conviction is reversed and the case is remanded for a new trial.

MORRIS, C. J., and CHRISTIANSON, GRIMSON, SATHRE and BURKE, JJ., concur.