**STATE of North Dakota, Plaintiff-Appellee,**

v.

**Roy C. NESET, Defendant-Appellant.**

**Cr. No. 470.**

Supreme Court of North Dakota.

March 28, 1974.

Gerald Rustad, Asst. State's Atty., Williston, for plaintiff-appellee.

Ella Van Berkom, Minot, for defendant-appellant.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment of conviction dated August 27, 1973, of the crime of driving a motor vehicle while under the influence of intoxicating liquor. The case was tried to the judge sitting without a jury in Williams County Court With Increased Jurisdiction.

The defendant-appellant, Roy C. Neset, was originally also charged with having an open bottle containing an alcoholic bever-age in a motor vehicle, in violation of Section 39–08–18, N.D.C.C. The Driving Under the Influence charge and the Open Bottle charge were tried together by stipulation. The Open Bottle charge was dismissed and is not before us.

The sole issue raised by Neset is the sufficiency of the evidence to sustain a judgment of conviction of driving a vehicle upon a highway while under the influence of intoxicating liquor, in violation of Section 39–08–01, N.D.C.C.

■ At the close of the State's case, Neset made a motion to dismiss [which in the future under Rule 29(a), N.D.R.Crim. P., should be referred to as a motion for judgment of acquittal] based, among other things, upon the insufficiency of the evidence as to both the Driving Under the Influence charge and the Open Bottle charge. This motion was denied by the court. Neset then presented his case, but did not renew his motion to dismiss based upon the insufficiency of the evidence after all the evidence was in. The court rendered judgment, finding Neset guilty of the crime of driving a vehicle upon a highway while under the influence of an intoxicating liquor and dismissing the Open Bottle charge. No motion for a new trial was made. With recent precedent we conclude that a review of sufficiency of the evidence is not precluded, even though the instant appeal is from the judgment only.

"The touchstones hereafter for an effective appeal on any proper issue should be (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal from the judgment. Any other traps for the unwary on the road to the appellate courthouse should be eliminated." State v. Haakenson, 213 N.W.2d 394 at 399 (N.D.1973).

■ In State v. Kaloustian, 212 N.W.2d 843 (N.D.1973), a case procedurally but not factually the same as the instant case,

as we shall see later in the opinion, there was an appeal from a conviction in a county court with increased jurisdiction of the crime of driving a vehicle upon a highway while under the influence of an intoxicating liquor, in violation of Section 39–08–01, N.D.C.C. In that case we said:

> "In State v. Miller, 202 N.W.2d 673 (N.D.1972); State v. Champagne, 198 N.W.2d 218 (N.D.1972); and State v. Carroll, 123 N.W.2d 659 (N.D.1963), we pointed out that the rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." State v. Kaloustian, *supra,* 212 N.W.2d 843 at 845.

To prove the crime charged in the instant case, the State must establish (1) that Neset was driving or in actual physical control of a vehicle upon a highway in this State and (2) that while so doing he was under the influence of intoxicating liquor.

Neset admits the driving element of the crime charged:

> "Q. [Miss Van Berkom] On April 15, were you involved in an accident with a car——with a pickup?
>
> "A. [Roy Neset] Yes, I was."

The evidence which the trial court considered, from which inferences were drawn, and which we must review is primarily circumstantial. In State v. Steele, 211 N.W.2d 855 at 869–870 (N.D.1973), and State v. Carroll, 123 N.W.2d 659 at 669 (N.D.1963), we quoted with approval from Corpus Juris Secundum as follows:

> "Where the circumstances are consistent with the hypothesis of accused's innocence as well as with that of his guilt,

the jury, or the trial court trying the case without a jury, must draw the inference, and an appellate court will not substitute its judgment for that of the jury or of the trial court." 24A C.J.S. Criminal Law § 1882 (1962).

■ In City of Minot v. Spence, 123 N. W.2d 836 (N.D.1963), a criminal case tried to the court sitting without a jury, in which the defendant was convicted of driving a vehicle upon a highway while under the influence of intoxicating liquor, this court viewed the evidence in the light most favorable to the judgment when resolving the issue of claimed insufficiency of the evidence. In Syllabus ¶ 2 we said:

> "In a criminal trial to the court without a jury, the trial court is the trier of the facts and its findings have the same force and effect as a jury verdict upon review in the appellate court." City of Minot v. Spence, *supra,* 123 N.W.2d 836.

To the same effect see also State v. Crosby, 277 Minn. 22, 151 N.W.2d 297 (1967); State v. Crowley, 174 Neb. 291, 117 N.W.2d 488 (1962).

■ Also in *Spence* we said:

> "In a criminal trial to the court without a jury, it is the province of the trial court to weigh the testimony and determine the credibility of witnesses." City of Minot v. Spence, *supra,* Syllabus ¶ 3, 123 N.W.2d 836.

The issue before us is whether the evidence was sufficient to prove that Neset was under the influence of intoxicating liquor at the time he was driving. Let us consider the evidence under the standards previously set forth.

The charges against Neset resulted from an investigation of a one-vehicle accident which occurred approximately one-half mile north of Tioga, North Dakota, on Highway No. 40.

Neset was taken into custody by Patrolman Finnessey of the Tioga Police Depart-

ment between 3:35 and 3:45 a. m., April 15, 1973. The Tioga Chief of Police, Duane Torgerson, was called at approximately 3:45 a. m. to give the defendant a breathalyzer test. Torgerson arrived at the station at approximately 4 a. m. The test was administered at 4:38 a. m., showing a reading of .16% alcohol by weight.

The time of the accident is in dispute. Neset admits to having entered Poncho's Bar near midnight, where he had one beer, ate supper, had another beer, and then bought a six-pack of beer before leaving for home. His home is one and a half miles east of Tioga. Neset testified that upon leaving Poncho's he stopped in Tioga at a friend's trailer house before going home, that he drank no alcohol while at the friend's house, and that he did not stay very long before leaving again. These facts are corroborated by another witness, Gary Raan, who testified Neset arrived at the trailer house about 2 a. m., had no alcohol to drink, and did not stay very long. Neset testified that the accident occurred when on his way home again he decided to return to Tioga.

"A. [Neset] I started to pull into Tioga and I wasn't going slow enough so I turned back. I got too far in the corner and the pickup slid in the ditch. Slid down in the ditch. Just before it stopped, it rolled over.

"Q. [Miss Van Berkom] And was it your intention in the first place to go into Tioga or to go home?

"A. I was kind of undecided. I—

"Q. Was it that indecision that caused the accident?

"A. Yeah."

A Mr. and Mrs. Gudvangen, on their way home that morning from the American Legion Club in Tioga, found the Neset pickup in the ditch. The Gudvangens testified they discovered the pickup in the ditch about 2:15 a. m. They stopped to see if anyone was injured and found Neset alone in his pickup. Mr. Gudvangen testified that he was very sure of the time, because the Legion Club closed at 2 a. m. and they left when it closed.

Although no one asked whether Mrs. Gudvangen had been drinking, the State's Attorney questioned Mr. Gudvangen about his drinking. He testified that he and his wife arrived at the Legion Club about 11:30 p. m. and that by 2 a. m. he was not sure how much he had imbibed, but admitted that it could have been more than ten vodka-cokes.

Neset testified that the accident happened about 2:15 to 2:20 a. m., and that he thereafter rode with the Gudvangens into Tioga for a few minutes and then to his farm home, where Neset and Gudvangen drank some beer and bourbon until the police arrived at about 3:30 a. m.

Neset's defense was that he became under the influence of alcohol after the accident, from liquor he drank after the accident, and that at the time of the accident he was not under the influence of intoxicating liquor.

The evidence regarding the time of the accident which the trial court lent credibility to was that of Officer Finnessey of the Tioga Police Department. Finnessey testified that he discovered Neset's pickup in the ditch at approximately 3:30 a. m., that he had patrolled this area several times during that evening, that the last time he had driven past the scene of the accident prior to discovering the accident was at approximately 3 a. m., that at that time there was no motor vehicle in the ditch, and that there was no one in the overturned pickup at the time he found it.

Gary Raan, who was at the trailer house of Neset's friend earlier in the morning when Neset visited there, testified that he was on his way from the trailer house to his home when he came upon the overturned pickup in the ditch sometime between 3 and 3:30 a. m. He also testified

that there was no one in the overturned vehicle when he went down to check it.

The Gudvangens and Neset further testified that after the accident Neset went with the Gudvangens into Tioga to report the accident, but that they could not find the police car or anyone at the police station to report to.

Deputy Russell LaPray of the Williams County Sheriff's Department testified that he arrived on the scene of the accident one-half mile north of Tioga on Highway 40 at approximately 4:40 a. m., or about the time Neset was at the Tioga police station undergoing the breathalyzer test. LaPray said that after making a routine investigation of the scene, he checked the interior of the pickup and found one open can of Budweiser beer and three full cans in a brown paper sack. Although Officer Finnessey testified that he checked the pickup to see if anyone was inside, he was never asked if he saw any beer in the pickup. Gary Raan testified he saw no open containers in the pickup. He did not see Finnessey take any open container out of the pickup.

Gudvangens and Neset said that when they were not able to find the patrolman so they could report the accident, they drove Neset home. Upon arriving at the Neset farm they talked about the accident, and Neset testified, "I tried to figure out what happened * * *" Apparently while they were sitting in the car at the Neset farm, Neset and Mr. Gudvangen each drank a can of beer from the six-pack that Neset testified he had taken from his pickup after the accident. After discussing the accident, Neset testified, he asked Mr. Gudvangen to help him check his cows, since it was near calving time and he was concerned about them. Neset then went into the house to get a flashlight and returned to the car with a small bottle of bourbon he had taken from his refrigerator. He said he took a couple of "snorts" and then they checked the cattle. They drove down to the corral to check the cattle and when they returned from checking the cattle they again parked in front of the Neset house and continued drinking. They were parked in front of the house when Finnessey arrived for the first time at approximately 3:30 a. m.

Finnessey testified that he had run a license-plate check on the pickup and found it was registered to George Neset, the father of Roy Neset, the defendant. George's farm was the one just east of defendant Neset's farm, but Finnessey, not knowing which farm was which, stopped at the defendant Neset's farm to inquire if that was where George, the registered owner of the pickup, lived. Upon arriving, he found the Gudvangens and Roy Neset in Gudvangen's vehicle. Finnessey asked who owned the pickup and if this was George Neset's farm. Finnessey was directed to the George Neset farm by Gudvangen on instructions from defendant Roy Neset. Finnessey then drove to the next farm, determined George Neset was not the driver, and returned to the defendant Roy Neset's farm. When he returned, the Gudvangens had left. Finnessey questioned Neset as to why he had not told him the first time that he was the driver of the pickup. Finnessey did not recall Neset's exact words, but said they were something to the effect that Finnessey had only wanted to know who owned the vehicle, not who was driving it.

We might interject that this conduct seems somewhat peculiar for a person who testified he had earlier gone into Tioga looking for a patrolman to report the accident to. Finnessey, after talking to Neset on the second trip to the farm, took Neset to the police station. He testified that he first arrived at the Neset farm at 3:30 a. m. and that he arrived at the police station at 3:45 a. m. with Neset.

Neset contends that it would be impossible to accomplish all of this within the fifteen-minute interval. Considering that these times were approximations and the close proximity of the George Neset farm

to the defendant Neset's farm and the Tioga police station, we do not find this testimony completely incredible.

Finnessey testified that when he returned to the defendant Neset's farm and took Neset into custody, his speech was slurred, he swayed from side to side, and there was a very moderate smell of alcohol on his breath.

Under the Neset-Gudvangen testimony relative to the time of the accident, Neset would have had from 2:15 a. m. to 3:30 a. m. in which to drink liquor after the accident. Under the testimony relied upon by the trial court, which places the accident between 3 and 3:30 a. m., Neset would have had at the most only thirty minutes in which to drink liquor after the accident.

▬▬▬ Considering the evidence in the light most favorable to the trial judge's judgment of conviction, we find the evidence sufficient to support the judgment of conviction.

*Kaloustian* is relied upon by Neset, but *Kaloustian* is distinguishable from the instant case. In *Kaloustian* there was no evidence of the consumption of liquor prior to the accident; here, Neset admits having two beers before the accident. In *Kaloustian* the officer who observed the defendant did not see him for at least one and a half hours after the accident; here, the officer, if we believe the evidence most favorable to the judgment, observed Neset within half an hour of the accident in such condition as the trial court could have concluded that he was under the influence of alcohol. In *Kaloustian* the test showed the defendant to have .12% alcohol by weight in his blood at the time of the test; here, Neset registered .16% alcohol by weight.

In State v. Glavkee, 138 N.W.2d 663 (N.D.1965), we said:

"To be guilty of operating a motor vehicle under the influence, in violation of Section 39–08–01(b), N.D.C.C., prohibiting the operation of any vehicle upon a highway of the State by one under the influence of intoxicating liquor, it is not essential that the driver be so intoxicated that he cannot drive. The expression 'under the influence of intoxicating liquor' covers not only the well-known and easily recognized conditions of intoxication but also covers any abnormal mental or physical condition which is the result of indulging, to any extent, in the use of intoxicating liquor, which use tends to deprive him of that clearness of intellect and control of himself which he otherwise would possess. In other words, a person may be 'under the influence of intoxicating liquor' within the meaning of the statute forbidding the operation of a vehicle upon the highway even though he is not intoxicated. This court, in the case of State v. Hanson, 73 N.W.2d 135, 140, approved the definition of the term 'under the influence of intoxicating liquor' as a condition created when a person's mental and physical functions have become abnormal to some slight extent from the use of intoxicating liquor; that it is immaterial whether the amount of liquor consumed was large or small." State v. Glavkee, *supra,* 138 N.W.2d 663 at 667.

Exercising our function as an appellate court to review the evidence rather than to decide the facts in the first instance, we conclude that the evidence supports the judgment of the trial court and accordingly we affirm the trial court's judgment.

KNUDSON, PAULSON, TEIGEN and VOGEL, JJ., concur.