STATE of North Dakota, Plaintiff and Appellee,

v.

Dwight ERICKSON, Defendant and Appellant.

Cr. No. 505.

Supreme Court of North Dakota.

June 24, 1975.

John M. Olson, State's Atty., and Robert P. Bennett, Asst. State's Atty., Bismarck, for plaintiff and appellee State of North Dakota; argued by Mr. Bennett.

Benjamin C. Pulkrabek, Public Defender, Bismarck, for defendant and appellant.

VOGEL, Judge.

On the night of April 11, 1974, the Bucket Bar in Moffit, North Dakota, was broken into, setting off an alarm in the home of Eugene Holzer, owner of the bar. Upon being awakened by the alarm, Holzer looked out his window to the bar across the street, where he saw a two-tone station wagon, which from the shape of the tail-lights he guessed to be a Ford, parked in front of the bar. Holzer then loaded a shotgun, left the house, and fired the shotgun at the right front fender of the car, about 90 to 100 feet away. Holzer testified that when he fired the shot he heard a sound like gravel hitting tin and then heard the car start. He also testified that when he fired the shot two people were on their way out of the bar carrying bottles and that they were not in the car when he heard it start. After these two entered the car it proceeded north out of Moffit.

Holzer then contacted the sheriff's department. When Deputy Hansen arrived, he and Holzer entered the bar and discovered that some bottles, cigarettes, and potato chips had been taken. Hansen then left to see if he could find the car. While in the Nona Erickson farmyard seeking help to round up some cattle belonging to Nona Erickson that were loose along the road, Hansen noticed a car parked there that he believed might be the vehicle described by Holzer.

Hansen later returned to the Erickson farm with Deputy Fischer and James Marion, a probation officer. They searched the bedroom of the defendant, Dwight Erickson, and found bottles, cigarettes, and potato chips that had been taken from the bar. While Erickson was being arrested, his sister Ava and JoAnn Bickel entered the room. Ava stated that Erickson hadn't broken into the bar—that she and Bickel had done it. There was testimony that when Ava again made this statement, JoAnn Bickel nodded her head when asked, "Is this right?"

Before trial, a motion by Erickson to sever his case from that of Bickel was denied. During trial, the trial court refused to allow Erickson to call Bickel as a witness, in view of her assertion that she refused to testify and claimed her privilege not to testify.

Erickson testified, claiming an alibi. He called his sister, Ava, as a witness, and she asserted that she and JoAnn Bickel committed the burglary alone, driving Erickson's car. Bickel did not testify.

Trial resulted in a verdict of guilty as to both defendants. Erickson was sentenced to two to four years in the penitentiary. He alone appeals.

Erickson filed the following notice of appeal on December 20, 1974:

"NOTICE IS HEREBY GIVEN that the defendant hereby appeals to the Supreme Court of North Dakota from his conviction which includes motions which were made on the 1st day of October, 1974; a verdict of guilty which was rendered on the 11th day of October, 1974; his sentence which was rendered on the 19th day of December, 1974; and his denial of a Motion for New Trial. Said denial was rendered on the 19th day of December, 1974."

Motions for discovery, severance of trial, and allowance of an expert witness were denied on October 4, 1974. A verdict of guilty was rendered on October 11, 1974. Erickson made a motion for new trial on October 21, 1974. An order denying the motion for new trial was rendered on December 19, 1974, and sentence was imposed the same day.

The State contends that the notice of appeal was not timely filed and that the appeal should therefore be dismissed.

The State contends, correctly, that the motion for new trial was not made in time. The motion was filed 10 days after the verdict. No extension of time was granted in the 7-day period allowed by Rule 33, N.D.R.Crim.P., which requires that a motion for new trial on any ground other than newly discovered evidence be made "within 7 days after verdict or finding of guilt or within such further time as the court may fix during the 7-day period." Since the defendant was not entitled to be heard on his motion for new trial, he can scarcely claim successfully that the court erred in refusing to allow him to call his codefendant as a witness at the hearing on the motion for new trial.

The State then goes on to argue that the defendant must appeal within 10 days from any order which is appealable or reviewable, and that orders not appealed from within 10 days are not subject to review. Thus the State claims that the defendant cannot obtain review of issues raised by denial of pretrial orders, the verdict, or the denial of the motion for new trial, since the purported notice of appeal was filed more than 10 days after the orders questioned were filed. This argument is untenable.

The defendant appealed "from his conviction," which can only mean that he appeals from the judgment of conviction. Rule 32(b), N.D.R.Crim.P., says that:

"A judgment of conviction shall set forth the plea, the verdict, and the adjudication and *sentence*." [Emphasis supplied.]

■ It is the judgment, not the verdict, which fixes the time for appeal. As is stated in Moore's Federal Practice, Volume 8A, Section 32.06, in discussing Rule 32, F.R.Crim.P., from which Rule 32, N.D.R. Crim.P., was adapted:

"The principal importance of the judgment, and its entry, is in relation to the taking of an appeal."

This is indicated by the provisions of Rule 32(a)(2), N.D.R.Crim.P. and F.R.Crim.P., which require the court, *after* imposing sentence in a case which has gone to trial on a plea of not guilty, to advise the defendant of his right to appeal. The importance of the entry of judgment (including the sentence) is further emphasized by Rule 4(b), N.D.R.App.P., which provides that an appeal filed before entry of judgment shall be treated as having been filed after and on the day of the entry of judgment. Thus, even if the defendant here had filed a notice of appeal before December 19, 1974, it would have been treated as if it were filed on December 19, 1974.

■ There is no need for the defendant in a criminal case to appeal from the denial of a motion for new trial, or other alleged presentence error, provided he appeals from the judgment. As is stated in 2 Wright, Federal Practice and Procedure: *Criminal*, Section 559, pages 540–541:

"The appeal, even after denial of a motion for a new trial, should be from the judgment. . . . These rules, however, should not be regarded as procedural snares for a defendant, and the appeal should be considered on the merits if a timely notice of appeal has been given even though it is erroneous in form."

As we said in *State v. Haakenson*, 213 N.W.2d 394 (N.D.1973), at 399:

"The touchstones hereafter for an effective appeal on any proper issue should be (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal *from the judgment.* Any other traps for the unwary on the road to the appellate courthouse should be eliminated." [Emphasis supplied.]

Having concluded that the appeal was timely filed, we will consider the issues raised by the appellant:

"1. Whether or not the Court erred when it refused to allow:

"a. Dwight Erickson's motion to sever his trial from JoAnn Bickel's.

"b. Dwight Erickson to call Miss Bickel as a witness during the trial.

"c. Miss Bickel to be called as a witness to testify at Mr. Erickson's motion for a new trial.

"2. Whether or not the Court erred when it refused to allow Mr. Erickson's motion for an expert witness.

"3. Whether or not the jury verdict was contrary to the testimony and evidence presented at trial."

Rule 14, N.D.R.Crim.P., provides for severance of defendants,

"If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, . . ."

We note the following language in the explanatory note to Rule 14, N.D.R.Crim.P.:

"Rule 14 is a restatement of prior existing Federal law under which severance and other similar relief was entirely discretionary with the court. Rule 14 is designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of defendants to a fair trial. [Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).]

"The issue raised in Rule 14 is when should the trial of multiple defendants be separated so that prejudice to the defendants will be avoided. Even though a danger of prejudice exists in all trials involving multiple defendants, the general rule is that public policy considerations in the administration of justice require that the severance be denied in the absence of a clear-cut showing of prejudice against which the trial court will not be able to afford protection."

See also, *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. 1969), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782, *rehearing denied*, 395 U.S. 941, 89 S.Ct. 2003, 23 L.Ed.2d 460.

Since "Joint trials of persons charged together with committing the same offense or with being accessory to its commission are the rule, rather than the exception" [*Parker v. United States, supra*, at 1196], a defendant seeking severance must show that he will be prejudiced by a joint trial and the trial court's ruling will be overturned only if it has abused its discretion.

In a similar case, the Ninth Circuit said:

"Ross moved for a separate trial pursuant to Rule 14, F.R.Crim.P., on the ground that if tried with his co-defendants he would be denied supposedly exculpatory testimony from two of them. The trial judge ruled that Ross failed to show the prejudice required by Rule 14 for a severance. The ruling will not be reversed absent a clear abuse of discretion. [Citations omitted.]

"Ross made no affirmative showing that the two co-defendants would be willing to testify for him in a separate trial. When there has been an insufficient showing that a co-defendant would actually testify at a severed trial, the district court has not abused its discretion by refusing to grant a motion to sever. [Citations omitted.]

". . . The burden of proving prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. [Citation omitted.]" *United States v. Noah*, 475 F.2d 688, 696 (9th Cir. 1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 and 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553.

See also, *Parker v. United States, supra*, at 1194.

The following language from *United States v. Barber*, 442 F.2d 517, 529–530 (3d Cir. 1971), *cert. denied*, 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275, also is apropos:

"Denial of severance is not a ground for reversal on appeal unless clear preju-

dice and abuse of discretion is shown. Johnson v. United States, 356 F.2d 680 (8 Cir. 1966). Our review of the record does not disclose a showing of such abuse or prejudice. The argument of appellant Barber that denial of severance prohibited him from calling his co-defendants as witnesses in his behalf has been answered by this court in United States v. Housing Foundation of America, 176 F.2d 665 (3 Cir. 1949), holding that a defendant may not compel another defendant to take the stand.[22] Moreover, the mere presence of

"[22] It would appear axiomatic that the constitutional right of a defendant not to testify at the behest of a co-defendant remains his right despite the severance of their trials. Thus, although a defendant may be entitled to call a co-defendant, United States v. Bronson, 145 F.2d 939, 943 (2 Cir. 1944), the co-defendant has the right to refuse to testify, United States v. Carella, 411 F.2d 729, 731 (2 Cir. 1969). But see Cohen v. United States, 363 F.2d 321 (5 Cir. 1966). Indeed, comment by one defendant's attorney on the refusal of another defendant to take the stand may result in reversible error as to the latter defendant's conviction, Coleman v. United States, 137 U.S.App.D.C. 48, 420 F.2d 616 (1969); United States v. Housing Foundation, supra. Barber could not have compelled testimony by a co-defendant, then, even if a severance had been granted. United States v. Arcuri, 405 F.2d 691, 695 (2 Cir. 1968)."

hostility among defendants or the desire of one to exculpate himself by inculpating another have both been held to be insufficient grounds to require separate trials. Dauer v. United States, 189 F.2d 343 (10 Cir. 1951).

■ At the time Erickson made his motion for severance, he made no showing that he would be prejudiced by a joint trial and he made no affirmative showing that his codefendant, JoAnn Bickel, would testify on his behalf at a separate trial. In his brief in support of his motion to sever, Erickson cited Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), for the proposition that severance should be granted when one of the codefendants has made a confession. In Bruton, however, a confession by a codefendant had

implicated the one seeking severance, a situation that is not present in the instant case. There was no showing of prejudice, other than the conclusion in the brief that to "prevent prejudice" the trials of Dwight Erickson and JoAnn Bickel must be severed. The attorney for Bickel indicated to the trial court that if Bickel were called as a witness by Erickson at the joint trial she would exercise her right not to testify. The record does not disclose any indication that Bickel would testify for Erickson in the event the trial was severed.

"Second, the likelihood that Rogers would testify in the event a severance was granted was not established. Rather, Rogers' counsel informed the court that he would advise his client not to testify. Therefore, there was no positive assurance that even if the codefendants were to be tried first that he would later testify for appellants, except Robert's uncorroborated declaration that Rogers would be willing to do so. The mere assertion that a codefendant might be willing to exculpate a defendant is purely speculative. The absence of substantial proof that a codefendant would be willing to testify for the defendant at a later date is, in itself, grounds for denying a motion for severance." [Citations omitted.] People v. Isenor, 17 Cal.App.3d 324, 333–334, 94 Cal.Rptr. 746, 752 (1971).

We held in State v. Whiteman, 79 N.W.2d 528 (N.D.1956), that a trial court's refusal to grant a separate trial will not be set aside unless it is shown that there has been a clear abuse of discretion. In the absence of a showing of prejudice and in the absence of a showing that Erickson's codefendant would testify for him in a separate trial, it cannot be said that the trial court abused its discretion in denying Erickson's motion for a severance.

Erickson also argues that his right to compulsory process for obtaining witnesses in his favor under the Sixth Amendment of the United States Constitution was denied him when the trial court denied his motion

to sever, thus denying him the right to call Bickel as a witness in his favor, and when the trial court refused to allow him to call Bickel as a witness at the joint trial.

■ Much of what has been stated with reference to the issue of severance is applicable on this point as well. Erickson made no showing that Bickel would actually testify for him. Bickel's attorney, in fact, indicated to the trial court that if Bickel were called as a witness she would exercise her privilege not to testify. Erickson could not compel Bickel to testify. See *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), where the Supreme Court, after discussing a defendant's right to compulsory process for obtaining witnesses in his favor, stated in footnote 21:

"Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination . . ."

See also, *United States v. Roberts*, 503 F.2d 598 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811; *United States v. Barber, supra; United States v. Carella*, 411 F.2d 729 (2d Cir. 1969), *cert. denied*, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112; *United States v. Housing Foundation of America*, 176 F.2d 665 (3d Cir. 1949). Erickson was not denied compulsory process for obtaining witnesses in his favor.

Erickson contended in oral argument that he should have been allowed to call Bickel as a witness and if she asserted her privilege not to testify, then Erickson could have commented to the jury upon Bickel's failure to take the stand. Such tactics probably would have violated Bickel's rights under the Fifth Amendment of the United States Constitution. *Coleman v. United States*, 137 U.S.App.D.C. 48, 420 F.2d 616, 625 (1969).

■ Erickson next urged that the trial court erred when it refused to allow Erickson to call Bickel as a witness at the hearing on Erickson's motion for a new trial.

The grounds urged for a new trial were (1) denial of Erickson's motion for severance, (2) denial of his motion for an expert witness, (3) refusal to allow Erickson to call Bickel as a witness at the trial, and (4) that the verdict was against the evidence. There was no allegation of newly discovered evidence, and the motion for new trial, as previously held, was not timely made. The trial court therefore was within its discretion in not hearing any witnesses.

Erickson contended that the trial court erred when it refused to allow his motion for an expert witness. He argued the following in his brief on appeal:

". . . If Mr. Erickson had been allowed to have an expert witness in the field of ballistics, he would have been able to prove whether or not the fender of the station wagon in question was hit by the shot fired by Mr. Holzer on the morning of April 11th. A ballistics expert would have been able to prove this by stating how many pellets could have been placed in a 30 inch circle at the distance stated by Mr. Holzer when he fired at the automobile. Such an expert witness would also have been able to determine how much of an indentation would have been made by the shotgun pellets at that distance. With such testimony, Mr. Erickson would have been able to raise these issues:

"(1) Whether or not the marks on the fender of the station wagon were made by a shotgun and at what distance from the car the gun was fired. Then if the distance involved was greater than that estimated by Mr. Holzer, he might have been too far away from the vehicle to tell whether or not the automobile was started immediately after the shot was fired;

"(2) If the fender of the vehicle had not been hit by shotgun pellets, then Mr. Holzer was mistaken about hearing the car being struck, and if he was mistaken about this, he could have been mistaken about whether or not he heard the automobile start when he claimed he did."

It is doubtful whether a ballistics expert was required to make the tests referred to. Lay testimony would have sufficed. Testimony of an expert is admissible if his opinion would be of appreciable help to the jury in a field in which the ordinary juror needs help. *Stein v. Ohlhauser*, 211 N.W.2d 737 (N.D.1973); *State v. Carroll*, 123 N.W.2d 659 (N.D.1963). Here, however, an expert's testimony would have been of no appreciable help to the jury in a field in which the ordinary juror needs help. It would not help the jury to know how many pellets could have been placed in a 30-inch circle at the distance Mr. Holzer stated that he was from the vehicle when he fired. Holzer testified that he shot low, and it is thus possible that only four pellets from the 30-inch pattern might have struck the vehicle. He also testified that when he fired the shot he heard a sound like gravel striking tin. One would be able to hear a car starting from within the range in which he could hear a sound like gravel striking tin. One would also be able to hear a car starting from within any range that pellets from a shotgun shell might reach when fired from a shotgun.

Furthermore, we fail to see how an expert, even one who might testify as defendant Erickson hoped, would help him. Erickson claimed an alibi, but called as his witness his sister, who admitted that Holzer fired a shotgun at the car. Since all versions agree on the firing of the shotgun and on the identity of the car used in the admitted burglary, it would seem that the number of pellets striking the car and the depth of penetration, if any, are matters of little moment.

Finally, Erickson asserts that the verdict was contrary to the testimony and evidence presented at trial.

There was no direct evidence placing Erickson in the Bucket Bar at the time of the burglary, but "circumstantial evidence alone may justify a conviction, provided it is of such probative force as to enable the trier of facts to say that the defendant is guilty beyond a reasonable doubt." *State v. Emmil*, 172 N.W.2d 589, 591 (N.D.1969). See also, *State v. Johnson*, 216 N.W.2d 704 (N.D.1974), and *State v. DePriest*, 206 N.W.2d 859 (N.D.1973).

The circumstantial evidence is strong. It includes evidence that the burglary was committed by three persons; that the defendant spent the early evening with Ava and JoAnn, one of whom said that the two girls committed the burglary; the fact that loot from the burglary was found in a closet in the defendant's room; and the admitted fact that the car usually driven by the defendant was used in the burglary.

The jury in the instant case was properly instructed and returned a verdict of guilty on the testimony and evidence before it.

When reviewing a judgment entered upon a jury verdict, an appellate court has only a limited function. See *State v. Steele*, 211 N.W.2d 855 (N.D.1973), wherein we held, in Syllabus ¶ 14:

> "It is not the function of the supreme court to substitute its judgment for that of the jury but instead only to examine the evidence presented in order to determine whether it supports the verdict and whether the defendant received a fair trial."

We have examined the record and find that the evidence supports the verdict and that Erickson received a fair trial.

Neither party shall have costs.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.