**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kenny BERGER, Defendant and Appellant.**

**Crim. No. 509.**

Supreme Court of North Dakota.

Oct. 6, 1975.

**8**

L. E. Greenwood, Dickinson, for defendant and appellant.

Donald L. Jorgensen, Asst. State's Atty., and Albert J. Hardy, State's Atty., Dickinson, for plaintiff and appellee; argued by Mr. Jorgensen.

ERICKSTAD, Chief Justice.

Kenny Berger, defendant and appellant herein, was convicted of assault and battery in violation of Section 12–26–02, N.D.C.C., in a nonjury trial heard by Judge Thomas Ewing of the Stark County Court of Increased Jurisdiction. Pursuant to Rule 13, N.D.R.Crim.P., a consolidated trial of Robert, Frank, and Donald Berger, as well as of the appellant, was begun at 9:30 a. m., January 31, 1975, and three of the State's witnesses had testified before the court discovered that it had neglected to arraign Donald, Frank, and Robert Berger. When the three would not waive the arraignment, the court severed the trial of the three Bergers from the trial of Kenny Berger and ultimately declared a mistrial as to the three.

Counsel for Kenny moved for a continuance at the time of the severance and again when Kenny's trial was reconvened after the arraignment of the three other Bergers. Both motions were denied. When Kenny's trial continued, his counsel refused to cross-examine four witnesses "for fear of waiving possible prejudice to the appellant." At the close of the State's case on January 31, 1975, Kenny's counsel moved for a mistrial, a dismissal, and a continuance; the first two motions were denied, while the motion for continuance was granted "for time to prepare a defense" until 1:30 p. m., February 6, 1975.

Kenny testified on his own behalf and was the only witness called by the defense. He testified that he had learned of the party being held to celebrate Gail Burton's birthday from a friend of hers at 8:00 or 8:30 p. m. and that the friend had invited them to stop in. He further testified that at 3:30 a. m. he and four or five others arrived at Gail Burton's house in a car driven by Donald Berger.

Testimony during the State's case indicated that some furniture had been broken, that the telephone had been torn from its connection, and that Anthony McKeown, Gail Burton's sixteen-year-old son, had been held by Kenny while one or two of Kenny's companions struck Anthony. Kenny's testimony was that he had remained outside the house briefly, during which time some of his companions entered the house, and that when he subsequently entered the house he observed a scuffle that lasted a minute or two. He said that he urged his companions to leave: " * * * I said let's get out of here, there is no party here, and I walked out and we left."

Kenny specifically denied either striking or holding Anthony McKeown, but the trial court found him guilty of assault and battery on the "unequivocal" testimony "that at least four persons saw Mr. Berger, this Defendant, holding Anthony McKeown while others did in fact beat on him." The court sentenced him to the Stark County jail for a period of six months with five of those months suspended upon conditions. Execution of the sentence was stayed pending this appeal.

Kenny asks this court to review

"(1) Whether an element of 'surprise' sufficient for granting a reversal or new trial was introduced into the trial?

"(2) Whether there was an abuse of discretion on the part of the Trial Judge in:

"a. firstly, denying a continuance;

"b. secondly, granting the continuance too late;

"c. thirdly, granting an insufficiently long continuance?

"(3) Whether the evidence was sufficient to establish the Appellant's guilt beyond a reasonable doubt?"

 We have previously determined that all three questions are addressed to the trial court's discretion and that our function is only to determine whether there has been an abuse of discretion:

"Applications for a new trial on the ground of surprise are addressed to the sound discretion of the court and its ruling will not be disturbed in the absence of a showing of abuse of discretion." Syllabus ¶ 5. *Bohn v. Eichhorst,* 181 N.W.2d 771, 773 (N.D.1970).

"The granting or refusing of an application for a postponement of a criminal trial is a matter within the sound discretion of the trial court. [Citations omitted.]

\* \* \* \* \* \*

"We have reviewed the entire record and have concluded that the trial court did not abuse its discretion [in denying defendant's motion for a postponement]. \* \* \*'" *State v. DePriest,* 206 N.W.2d 859, 862, 863 (N.D.1973).

"In passing upon a motion for a new trial based on the insufficiency of the evidence, the trial court is clothed with a wide discretion, and its determination in regard thereto will not be disturbed unless there appears to have been an abuse of that discretion." Syllabus ¶ 3. *Id.,* at 860.

We have also ruled that granting a separate trial upon motion of a defendant lies within the discretion of the trial court and depends upon circumstances from which it is apparent to the court that the ends of justice require a separate trial. *State v. Whiteman,* 79 N.W.2d 528, 533 (N.D.1956); *accord, State v. Erickson,* 231 N.W.2d 758 (N.D.1975). Rule 14, N.D.R.Crim.P., allows either the accused or the State to seek a severance where its case is prejudiced. "The application of this rule to a particular set of circumstances rests in the sound discretion of the trial judge \* \* \*" *Brown v. United States,* 126 U.S.App.D.C. 134, 375 F.2d 310, 315 (1967), *cert. denied* 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359;

*accord, United States v. Hutchinson,* 488 F.2d 484 (8th Cir. 1973), *cert. denied* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219; *Garris v. United States,* 135 U.S.App.D.C. 251, 418 F.2d 467 (1969); *Roth v. United States,* 339 F.2d 863 (10th Cir. 1964); *Goodman v. United States,* 273 F.2d 853 (8th Cir. 1960).

 Since granting a severance upon motion of the prosecution is a matter within the discretion of the trial court, we will reverse such an order only upon a showing of abuse of discretion resulting in prejudice to the defendant. *See Garris v. United States, supra,* 418 F.2d at 469; *White v. United States,* 395 F.2d 170, 175–176 (8th Cir. 1968), *cert. denied* 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115; *Roth v. United States, supra,* 339 F.2d at 865; *United States v. Dioguardi,* 20 F.R.D. 10, 13 (S.D.N.Y.1956).

Rule 50, N.D.R.Crim.P., provides that the trial court "may make such orders for advancement or continuance of a criminal action or proceeding as may be necessary in the interest of justice." The commentary to rule 50 declares that the statement

" \* \* \* is intended to echo the A.B.A. Standards which provide that a continuance should be granted 'only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecution or defense, but also the public interest in prompt disposition of the case.' [A.B.A. Standards for Criminal Justice, Speedy Trial, § 1.3 (Approved Draft, 1968).]"

The accused is guaranteed the right to a speedy trial. United States Constitution, Article VI; North Dakota Constitution, Section 13. However, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag,* 348 U.S. 3 [75 S.Ct. 1, 99 L.Ed. 4]." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921, 931 (1964), *reh. den.* 377 U.S. 925, 84

S.Ct. 1218, 12 L.Ed.2d 217. In *Ungar v. Sarafite*, the United States Supreme Court said:

> "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*, 376 U.S. at 589, 84 S.Ct. at 850, 11 L.Ed.2d at 931.

Counsel alleges that Kenny was surprised by the severance and asserts that he had planned his defense strategy upon an agreement by all the codefendants to testify. After the severance counsel noted that the other three Bergers, on the advice of their attorney, refused to testify for Kenny.

As to civil actions, we have defined surprise, sufficient to grant a new trial, as "an occurrence out of the usual course of events which happens suddenly or unexpectedly without any design on the part of the person affected and which ordinary prudence could not have guarded against. *Baird v. Kensal Light & Power Co.*, 63 N.D. 88, 246 N.W. 279. * * *" *Hamre v. Senger*, 79 N.W.2d 41, 46–47 (N.D.1956). The surprise must be so material that "a different verdict would have been rendered or [that] a new trial will probably result in a changed verdict. * * *" *Id.*, at 47.

In criminal cases, the accused "is entitled to a fair trial according to the principles embodied in the Constitution and the laws of this state. * * * If a substantial right has been prejudiced a new trial should be had. * * *" *State v. Torzeski*, 79 N.D. 105, 112, 54 N.W.2d 879, 883 (1952).

Keeping in mind the guarantee of a fair trial, we must review, in accordance with *Ungar v. Sarafite, supra,* the circumstances present in the case and the reasons asserted at the trial in support of the motion to determine whether the court abused its discretion.

 Kenny claims that he lost exculpatory testimony that his cross-examination of the original codefendants would have revealed had they testified in their own defense. Yet it has long been recognized that "[n]o accused person has any recognizable legal interest in being tried with another, accused with him, though he often has an interest in not being so tried * * *" *United States v. Bronson*, 145 F.2d 939, 943 (2d Cir. 1944); *United States v. Arcuri*, 405 F.2d 691, 695 (2d Cir. 1968). Thus, while a defendant has a right to the voluntary testimony of a codefendant, the codefendant may justifiably refuse to testify. *State v. Erickson*, 231 N.W.2d 758, 763 (N.D.1975); *United States v. Carella*, 411 F.2d 729, 731 (2d Cir. 1969); United States Constitution, Article V; North Dakota Constitution, Section 13.

 Incidentally, the record in this case does not indicate what the testimony of Kenny's three codefendants would have been, had no severance occurred, nor does it indicate that counsel made an offer of proof relative thereto. In any event, since the motion for continuance was sought mainly to secure a reconsolidation of the cases, and this Kenny was not entitled to, we find no abuse of discretion in the trial court's denial of the motion for continuance.[1]

---

1. Consistent with his desire to be tried with his original codefendants, appellant asserts in his brief that

> "The oversite [*sic*] by the trial judge, resulting in a failure to arraign the Appellant's co-defendants, could have been corrected by granting a continuance or declaring a mistrial as to the trial of Appellant as well as for the trial of Appellant's three co-defendants. A continuance or mistrial would allow Appellant's counsel to proceed with the Appellant's defense as

planned and which became impossible because of the trial judge's oversite [*sic*]."

During the trial, however, when the state offered to continue the matter so that all four Bergers could be tried together, the court asked, "Mr. Greenwood, does the Defendant Kenneth Berger have any objection to it?" Appellant's counsel responded, "I stand mute. I don't know what my legal position is. I can't agree [to] or accept the consequences of any act that the Court performs at this time."

Nor can we find an abuse of discretion in the trial court's severance of Kenny's trial from that of the other Bergers. Kenny's bare assertion that he and his relatives had some sort of agreement to all take the stand in the consolidated trial and that the severance disrupted this is unavailing. In *United States v. Kahn*, 381 F.2d 824 (7th Cir. 1967), where the defendants suggested that testimony of a codefendant would not be available unless the trial were severed, the court said: "The unsupported possibility that such testimony might be forthcoming does not make the denial of a motion for severance erroneous." *Id.*, at 841.

It follows that the unsupported possibility that favorable testimony might have come forth had not the cases been severed does not make the severance erroneous or prejudicial per se. Accordingly, we conclude that the trial court did not abuse its discretion in ordering the trials separated.

■ After the denial of the motion for continuance at the time that the court severed the trials, defense counsel refused to cross-examine the rest of the State's witnesses. At the close of the prosecution's case, counsel renewed his request for a continuance, and at that time the motion was granted. He urges that the court abused its discretion in granting the continuance too late.

Two of the witnesses for the State were from South Dakota and would have had to return to Dickinson another day if the continuance had been granted before they were allowed to testify. Counsel recognized this fact when he stipulated to the discharge of the witnesses. As the severance of the other cases had no bearing on the testimony of the State's witnesses, we can conceive of no justification in counsel's refusal to cross-examine and find in his refusal no basis for holding the first refusal to grant a continuance as an error.

It was not until after the State had presented its case that counsel, in support of his motion for a continuance, intimated that he intended to locate and call some witnesses "to take the place of some of the other three codefendants." The court then granted a six-day continuance.

We think that the decision to grant the six-day continuance only after the State had completed its case was reasonable. Having heard the testimony of the State's witnesses, counsel had the best possible basis for preparing the defense. We conclude that the delay in granting the continuance was justified by the circumstances and that it did not result in prejudice to the defendant.

■ Kenny asserts that the continuance was not long enough and that the trial judge abused his discretion in not granting a longer one. The complaint was subscribed and sworn to on December 6, 1974; Kenny was arraigned on December 11, 1974.

Since the purpose of the continuance was either to compel the original codefendants to appear, as appellant's brief indicates, or to locate other witnesses, as counsel indicated to the trial judge, and since Rule 17(a)(1), N.D.R.Crim.P., clothes the attorney with the power to require a magistrate or clerk of court to issue subpoenas for the attendance of witnesses, the circumstances do not demonstrate an abuse of discretion. The codefendants could have been compelled to remain in the courtroom as possible witnesses upon motion at the time of severance. After the continuance, they could have been subpoenaed. Kenny has not shown that he attempted to subpoena the codefendants. *See Davis v. United States*, 9 F.2d 826, 828 (8th Cir. 1925) where the witness sought was also under indictment and there was no showing that he had been subpoenaed; *held*, no abuse of discretion in denying the motion for continuance.

Testimony by Kenny indicated that he and his relatives had been accompanied by two other persons, whom he knew to be from Mandan, but whom he did not know by name. In the nearly two months that transpired from the initiation of the criminal complaint until the date of trial, we

think it obvious that reasonable diligence by one or all four Bergers would have resulted in discovery of the identities of their colleagues. In *Thompson v. United States,* 381 F.2d 664 (10th Cir. 1967), the court cited *Leino v. United States,* 338 F.2d 154 (10th Cir. 1964), and *Smith v. United States,* 273 F.2d 462 (10th Cir. 1959), in holding that the trial court had not abused its discretion in denying a continuance where there had not been a showing of due diligence to obtain attendance of the witness or of the relevance of the testimony that the witness would give. 381 F.2d at 666.

Kenny's proper relief for the alleged brevity of the continuance should have been a motion for further continuance on February 6, 1975, preferably (but not necessarily) in the nature of an application for continuance on ground of absent witness, Section 29–19–06, N.D.C.C., which relates to an application for continuance "when a criminal action is called for trial, or at any time previous thereto." Section 29–19–05, N.D.C.C. *See also,* Rule 50, N.D.R.Crim.P. Since this matter was not appropriately raised in the trial court so that it could intelligently exercise its discretion, one of the two touchstones for an effective appeal listed in *State v. Haakenson,* 213 N.W.2d 394, 399 (N.D.1973), and reiterated in *State v. Erickson, supra,* 231 N.W.2d at 761, we need not rule on it, but the circumstances of the matter do not appear to demonstrate an abuse of discretion in granting a six-day continuance.

■ Kenny further contends that the evidence was not sufficient to establish guilt beyond a reasonable doubt. While no motion for a new trial was made, defendant's counsel did move to dismiss at the close of the State's case. We treat that as a motion for judgment of acquittal under Rule 29(a), N.D.R.Crim.P., as it should properly have been denominated. *State v. Neset,* 216 N.W.2d 285, 286 (N.D.1974). As

such, it fulfills the requirements of an effective appeal. *State v. Haakenson, supra,* 213 N.W.2d at 399.

We agreed in *Neset* with our previous decision in *City of Minot v. Spence,* 123 N.W.2d 836 (N.D.1963), wherein

" * * * this court viewed the evidence in the light most favorable to the judgment when resolving the issue of claimed insufficiency of the evidence. In Syllabus ¶ 2 we said:

"'In a criminal trial to the court without a jury, the trial court is the trier of the facts and its findings have the same force and effect as a jury verdict upon review in the appellate court.' *City of Minot v. Spence, supra,* 123 N.W.2d 836." *State v. Neset, supra,* 216 N.W.2d at 287.

■ In reviewing the verdict of a jury to determine whether the evidence is sufficient to establish guilt beyond a reasonable doubt, our duty is to determine whether substantial evidence supports the verdict. *State v. Steele,* 211 N.W.2d 855, 870 (N.D. 1973). *See also, State v. DePriest, supra,* 206 N.W.2d at 865; *State v. Champagne,* 198 N.W.2d 218, 226 (N.D.1972); *State v. Ankney,* 195 N.W.2d 547, 550–551 (N.D. 1972); and *State v. Carroll,* 123 N.W.2d 659, 668 (N.D.1963). In summary, "at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D.1973).

■ In *Kaloustian* we were confronted with a conviction based largely on circumstantial evidence. In this case, four witnesses identified the defendant as the person who restrained Anthony McKeown while others struck him.[2] Only the defend-

---

**2.** During the trial the witnesses called by the State were sequestered from the courtroom and admonished "not to listen to what is going on in the courtroom and not to

discuss part of this case with each other." The first witness Tony McKeown admitted that things "were kind of a blur" but he testified that Kenny was holding him by the

ant testified to the contrary, specifically denying that he had held or even touched Tony.[3] Considering the evidence in the light most favorable to the trial court's judgment of conviction, we find that the judgment is supported by substantial evidence.

For the reasons stated herein, we affirm the judgment of the trial court.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.

shoulders while another person struck him. Pat McKeown, who had entered the kitchen after he had been assailed in an upstairs bedroom, testified, "I seen Kenny Berger was holding onto him [Tony] and another person was striking him." He further testified, "When I seen him [Tony] he was being held up" and blood was emanating from his nose and mouth. On cross-examination he admitted he is nearsighted and could not recall whether he had put his glasses on before going downstairs, although he had dressed before leaving the upstairs bedroom.

Alvin McKeown said that Kenny "had ahold of my brother by the arm" and that "two guys had ahold of him [Tony] and another guy was hitting him." Diana Styles testified, " * * * Kenny was holding

Tony and he was telling this other guy to hit him, to get at him, to fight him, to punch him, and all this."

3. Judge Ewing, in announcing his verdict, referred to the defendant's testimony:

"* * * It seems incredible to me that a carload of men could drive a car to a house and that the first ones could enter the house and within thirty seconds a full scale fight could be established between some of the members of the car and at least two occupants of the house * * * [without the defendant] having any knowledge as to what it was all about or what happened or anything. So I find his testimony unbelievable and I choose to believe the testimony of the four prior witnesses. * * *"