**Daniel E. GARRIS, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 21572.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 25, 1969.

Decided April 25, 1969.

Mr. John D. Perkins, Washington, D. C. (appointed by this court) for appellant.

Mr. James A. Treanor, III, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Miss Carol Garfiel, Asst. U. S. Attys., were on the brief, for appellee. Mr. Joel M. Finkelstein, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge:

This appeal arises from appellant's conviction on two counts for grand larceny and housebreaking in violation of 22 D.C.Code §§ 2201 and 1801. Garris originally was indicted on four counts,

one of grand larceny and housebreaking for each of two thefts on or about February 10, 1967—the first two counts relating to a theft from the apartment of Dr. and Mrs. Richard Scott, 1901 Lincoln Road, N. E., Washington, D. C., and the third and fourth counts relating to a theft from an apartment at 1429 Girard Street, N. W., Washington, D. C., occupied by two Howard University students. The basic evidence implicating appellant was the testimony of a police officer and his father-in-law that when he was off duty he was approached by appellant (and two others) who offered to sell a television set for $25, and brought them into an apartment building hallway where numerous articles were lying on the floor. Other evidence identified these as the property of the respective occupants of the two apartments.

■ The only issue meriting discussion relates to severance of counts for trial.[1] The conviction before us was on counts 3 and 4 (Girard Street apartment). The case came up for trial on the original indictment on August 29, 1967. The government at that time moved under Rule 14 of the Federal Rules of Criminal Procedure to sever counts 3 and 4 because the two students who lived in the Girard Street apartment were out of town during the summer recess. No consolidated trial could be projected for a time after their return the following month because by that time Mrs. Scott, who was then present for the trial, would have begun teaching school in Baltimore where she and her husband had moved in the interim.

Defense counsel made only a general objection to any severance. The judge granted the motion for severance. Defense counsel also moved for a dismissal on the two counts not ready for trial (Girard Street theft). Government counsel stated that the earlier disposition of certain motions by the defendant had delayed the case in its journey to the ready calendar, and that the present situation had not been anticipated, notice of the students' change of address having been received only a few weeks before. With the students due to return in a month, the judge did not grant the dismissal on counts 3 and 4. The judge proceeded with trial on the first two counts (Scott apartment) and this resulted in a jury acquittal.

■ Following the subsequent trial and conviction on counts 3 and 4, counsel on appeal argues prejudice from the severance, asserting that in a consolidated trial the defense could have exploited the weakness of proof as to the Scott apartment charge, and undercut the government's position, reflected in the indictment, that within a very short period of time defendant not only broke into the student's apartment close to the hallway where the arrest was made, but also broke into the Scott's dwelling over 33 blocks away.[2] The government responds that the offenses do not stand or fall together, that in case of joinder the strength of the government's clear case as to Girard Street might have induced a conviction on the case as to the more remote Scott apartment, and that in any event the jury could have convicted as to Girard Street even assuming it acquitted as to the Scott apartment.

We do not pursue these speculations as to possible prejudice to the theory of defense because no such contention of

1. We find that testimony concerning Garris' offer to sell the goods, his leading the prospective buyers to where they were stored, and his remaining with the goods during an interval when others had departed was sufficient evidence to allow a jury to find that Garris was in possession of recently stolen property and to infer larceny and housebreaking. We find no merit in appellant's arguments that defense should have been allowed to impeach a witness with his juvenile court record and was improperly and prejudicially rebuked by the trial judge for mentioning defendant's prior acquittal.

2. Appellant also suggests that the severance denied him his right to a speedy trial. Since the second two counts were tried two months after the first trial, and within nine months of his arrest, we find no merit in this claim.

prejudice was made to the judge considering the pre-trial motion. The possibility of such prejudice was not so manifest that the judge was under a duty to notice it himself. We think the judge acted within his discretion when he responded to the showing made by the government, the lack of any specific prejudice claimed by the defendant, and his general disposition that severance is likely to promote justice in the disposition of cases by avoiding carryover to one incident of the evidence introduced for another. Compare Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

In the exercise of discretion under Rule 14, the judge must weigh the prejudice asserted, usually by a defendant, against the interest of "economy and expedition in judicial administration."[3] The burden on judicial machinery may

not be an obstacle when severance is indicated in order to provide fairness to defendant to avoid a situation where the jury might use the evidence of one crime to find guilt in another, or cumulate the evidence in two weak cases, or become hostile against a defendant charged with several crimes.[4]

■ Our case involves a reversal of customary roles, with the government seeking severance. It appears to be accepted that there is a double standard, a heavier burden when severance is sought by the government rather than defendant.[5] The precedents reveal differences in approach as to the quantum of burden on the government.[6]

■ Appellant contends that the government was not prejudiced at all, but at most inconvenienced. The term "prejudice" as used in Rule 14 is not neces-

3. Baker v. United States, 131 U.S.App.D.C. 7, 26, 401 F.2d 958, 977 (1968).

4. Drew v. United States, *supra.*

5. *See* 8 Moore's Federal Practice, ¶ 14.05, at 14–33 to 14–35 (1968).

6. A relatively light burden is reflected in United States v. Dioguardi, 20 F.R.D 10 (S.D.N.Y.1956). A more onerous standard, requiring a "strong showing of prejudice," was stated in United States v. Cappello, 209 F.Supp. 959 (E.D.N.Y. 1962), aff'd, 327 F.2d 378, 379 (2d Cir. 1964). The *Cappello* approach was favored in Standards Relating to Joinder and Severance (Tentative Draft 1967), recommended by the Advisory Committee on Criminal Trial, as part of the American Bar Association Project on Minimum Standards for Criminal Justice. However, the Special Committee with the concurrence of the Advisory Committee, considered the *Cappello* test too strict, and proposed an amendment which was ultimately approved by the ABA House of Delegates in 1968. The Approved Draft, 1968, contains as an example a situation similar to that presented in the case before us. See Commentary on § 2.2 of the Approved Draft (Supplement):

Although the test is the same whether the motion for severance of offenses is made by the prosecution or the defense, whether there can be a "fair determination of the defendant's guilt or innocence of each offense" will sometimes depend upon the present state of the prosecutor's case. The view has sometimes been taken that once the government has decided to proceed with prosecution for various offenses, it should be prepared to present proof as to each count of the charges, so that a severance because of a lack of evidence on one of the offenses charged would not be permitted. United States v. Cappello, 209 F.Supp. 959 (E.D.N.Y. 1962). That position has been rejected here on the ground that it is too strict; the prosecutor, although originally prepared to go to trial on several counts, may sometimes be confronted with an unanticipated change of circumstances, as where an important witness on one of the counts cannot be found. When this occurs it is preferable to permit the prosecutor to obtain a severance, rather than to force him to seek a continuance as to all joined offenses. ABA Standards, Speedy Trial § 2.3(d)(1) (Approved Draft 1968), or to have all counts dismissed to toll the running of the time for speedy trial, *id.* at § 2.3(f).

We have noted that prejudice may appear where the privilege against self-incrimination prevents one defendant from testifying against a fellow defendant. *See* Cephus v. United States, 117 U.S. App.D.C. 15, 20, 324 F.2d 893, 898 (1963), at footnote 22: "The Government may, in such cases, indict defendants separately or move for severance upon trial. *See* United States v. Dioguardi, 20 F.R.D. 10, 13 (S.D.N.Y.1956), and cases cited."

sarily as great as the prejudice an appellate court must find for reversible error. Compare Baker v. United States, *supra* note 4, at 973. Its meaning is not subject to rigid definition, and depends to a considerable extent on the perception of the district judge. Prejudice is not limited to a showing of irrevocable damage, certain to occur, and impossible to overcome. Prejudice may also lie in shouldering substantial risk that a situation will not be remedied.

This is not a case of a disparageable government claim reflecting an inadequate or hasty investigation.[7] It is not suggested that the government was acting in bad faith, or seeking only a tactical advantage, such as severing the strong case from a weak case.[8]

In granting severance here, the judge may have been influenced by a lack of specific claim of defense prejudice. Indeed, he was apparently responsive to the thrust of *Drew* that severance is generally likely to be in furtherance of just verdicts.[9] It was not error to take these matters into consideration where, as here, the government made at least a threshold showing of prejudice, in that, unexpectedly, the necessary witnesses as to the two transactions could not be available at the same time.

The interest of fairness to defendant is a key concern in motions for severance, but the judge did not ignore this concern. His general assumption that severance promotes dispositions just and fair to defendants was not inappropriate in the absence of a specific indication of how fairness would be undermined.

Affirmed.

---

7. *See* footnote 6, *supra*, for discussion where such claims were discredited.

8. In United States v. Sherman, 84 F.Supp. 130, 132 (E.D.N.Y.1947), aff'd in part and rev'd in part on other grounds, 171 F.2d 619 (2d Cir. 1948), cert. denied, Grimaldi v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949), defendant's motion for severance, because a weak case was being tried with a strong one, was denied, the district court saying: "I believe thoroughly in eliminating prejudice wherever it can be shown to exist, even if that entails a number of trials. But I do not subscribe to the notion that

variations in the strength of the proof inevitably create unfairness."

Mere denial of tactical advantage is not necessarily "prejudice" calling for severance. In Robinson v. United States, 93 U.S.App.D.C. 347, 349, 210 F.2d 29, 32 (1954), this court said: "The mere fact that appellant might have had a better chance of acquittal if tried separately from [the other defendant] does not establish his right to a severance." *Accord*, United States v. Brennan, 134 F.Supp. 42, 52 (D.Minn.1955).

9. He said: "Ordinarily there would be a severance—two separate crimes."