**UNITED STATES of America**

**v.**

**Cesar Sandino GRULLON, Virgilio Armando Mejia, Ramon Barrientos, and Michael Karasik.**

**Crim. No. 79–180.**

United States District Court,
E. D. Pennsylvania.

Oct. 9, 1979.

Roberto Rivera-Soto, W. Cecil Jones, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

William A. Clay, Miami, Fla., for Ramon Barrientos.

Carl H. Lida, Miami, Fla., for Michael Karasik.

Carmen C. Nasuti, Philadelphia, Pa., for Cesar Sandino Grullon.

Elliott D. Goldberg, Phoenixville, Pa., for Virgilio Armando Mejia.

POLLAK, District Judge.

On October 5, 1979, I entered an order granting Government's motion for severance; specifically, I directed that the jury trial of defendants Barrientos, Grullon, Mejia and Karasik, scheduled to commence on October 9, be divided into two trials—the first of Grullon and Mejia, the second of

Barrientos and Karasik. This opinion is intended to explain that ruling.

The indictment in this case contains two counts. The first count charges all four defendants with conspiracy to export firearms from the United States to Nicaragua without the export license required by law. The second count charges defendants Grullon and Mejia with conspiracy to import cocaine from Colombia into the United States.

The Government's motion for severance focused on a single issue: the Government intends to place in evidence, as part of its case-in-chief against defendants Grullon and Mejia, post-arrest statements made by them. References in those post-arrest statements to defendants Barrientos and Karasik cannot, in the Government's view, be effectively redacted. Therefore, so the Government argued, a trial of all four defendants would jeopardize Barrientos' and Karasik's constitutional right of confrontation (*Bruton v. United States*, 391 U.S. 123, 86 S.Ct. 1620, 20 L.Ed.2d 476 (1968)), since in such a joint trial Barrientos and Karasik could not call their co-defendants to the witness stand in order cross-examine them on their post-arrest statements.

In opposition to the Government's motion for severance, counsel for Barrientos and Karasik (1) expressed doubt that effective redaction is impossible, and (2), in any event, undertook to waive their clients' *Bruton* rights.

A reading of the post-arrest statements has persuaded me that effective redaction is indeed quite unlikely. Under these circumstances, if the Government's *Bruton* misgivings had been the only issue upon which the disposition of the motion for severance turned, a ruling on that motion would have had to await October 9. The first matters scheduled to be considered that day, before the trial itself commences, are motions to suppress their post-arrest statements filed by Grullon and Mejia. If both of those motions are granted, the *Bruton* problem would have disappeared without regard to severance. On the other hand, if either of the post-arrest statements is not suppressed, there would have been posed for

consideration the question whether both Barrientos and Karasik would, in person and after extended colloquy, have been capable and desirous of making voluntary and intelligent waivers of their *Bruton* rights.

But the *Bruton* problem was not the only one. There was another ground—curiously unmentioned in the Government's motion but included in its supporting memorandum—for the Government's proposal to sever. This other ground is in a sense the obverse of the *Bruton* problem. Just as, at a joint trial, Barrientos and Karasik would be unable to summon their co-defendants Grullon and Mejia to the witness stand to be cross-examined on their post-arrest statements, so too at a joint trial the Government could not summon Grullon and Mejia to the stand to give evidence as part of the Government's case-in-chief against co-defendants Barrientos and Karasik. Wherefore, the Government evidently wishes to try Grullon and Mejia first, and then, after they have been convicted or acquitted, be able to compel their testimony in the subsequent separate trial of Barrientos and Karasik.

[1] Under Rule 14 of the Federal Rules of Criminal Procedure, the touchstone for the granting of a severance, whether at the instance of the Government or of the defense, is a showing of "prejudice" to the moving party if joinder is maintained. The prejudice to the Government, if severance is not granted in this case, is the unavailability, as against Barrientos and Karasik, of the testimony of Grullon and Mejia. Conversely, the prejudice to Barrientos and Karasik, if severance is granted, is the loss by them of insulation from the potentially damaging testimony of their co-defendants. Is either of these a legally cognizable form of prejudice?

The case closest to the one before us is *United States v. Dioguardi*, 20 F.R.D. 10 (S.D.N.Y.1956). Although it is unclear from the published opinion that the Government moved for a severance there with a view to calling those tried first as witnesses against those tried subsequently, the very thorough discussion of the case in 8 Moore's Federal Practice ¶ 14.05 (1978) makes this

manifest. In *Dioguardi*, Judge van Pelt Bryan concluded that there was "grave doubt whether these defendants have any standing to object to the Government's desire to proceed by way of two trials rather than by one trial," 20 F.R.D. at 13, and granted the requested severance. *See also United States v. Lang*, 527 F.2d 1264 (4th Cir. 1975). The rationale underlying this result seems to be that "since the government could have framed separate indictments in the first place, it should be allowed to reach the same result by severance." 8 Moore's Federal Practice 14–113 (1978). "The Government may, in such cases, indict defendants separately or move for severance upon trial." *Garris v. United States*, 135 U.S.App.D.C. 251, 253 n.6, 418 F.2d 467, 469 n.6 (D.C.Cir.1969) (quoting *Cephus v. United States*, 117 U.S.App.D.C. 15, 20 n.22, 324 F.2d 893, 898 n.22, (D.C.Cir.1963)).

■ Were I convinced that such a result tended to accord merely a tactical advantage to the Government, I might be prepared to disregard the foregoing authority in favor of a "sporting theory" of litigation that would require the Government to live with its original decision to indict all of these defendants together.[1] But there is more at stake here than there is at a sporting event. The hope is that in an adversary trial the truth will win out, not simply one of the parties. As it is basic to such a trial that the accused can call witnesses who may exculpate them, so too it is basic that the Government can call witnesses who may inculpate them, provided that the rights of the witnesses and of the accused are not violated. In short, the Government's interest in severance seems an appropriate pursuit of a legitimate prosecutorial end.

What remains to be considered is whether the disadvantage which may befall Barrientos and Karasik, if severance is granted, infringes upon an interest which ought to be protected—at least as a matter of judicial discretion, if not as a matter of manifest entitlement.

One way of identifying the interest of Barrientos and Karasik in a non-severed trial is to inquire whether, if they had been indicted separately from Grullon and Mejia, they would have had any persuasive ground for insisting upon joinder. The answer is clear that they would not. As Judge Learned Hand stated in another context: "No accused person has any recognizable legal interest in being tried with another, accused with him, though he often has an interest in not being so tried." *United States v. Bronson*, 145 F.2d 939, 943 (2d Cir. 1944). If, however, there is no basis in law for obtaining a joinder of defendants who have been separately charged, it is difficult to understand why defendants jointly charged should have an interest in maintaining joinder of such magnitude as to bar an otherwise justifiable Government motion for severance.[2]

Nor do I read the cases denying a severance sought by the Government to hold differently. The leading case, *United States v. Capello*, 209 F.Supp. 959 (E.D.N.Y. 1962), involved a proposed severance by counts, not by defendants, and Judge Bartels pointed out that the Government had not shown in what respect it would be prejudiced by the joinder. Furthermore, he acknowledged that a severance by defendants would have been a very different matter and quoted with approval the language of Judge Hand set forth above. 209 F.Supp. at 960. A severance was also denied the Government in *United States v. Zim Israel Navigation Co.*, 239 F.Supp. 446, 447 (S.D.N.Y.1965). But there, the Government's justification for seeking a severance seemed largely one of convenience; had it been granted, the severance would, in Judge Weinfeld's view, have deprived the defendant which the Government sought to

---

1. Something like a sporting theory may have been implicit in the denial of severance in *United States v. Capello*, 209 F.Supp. 959, 960 (E.D. N.Y.1962) although the severance requested there was, as pointed out below, one by counts. *See also 8 Moore's Federal Practice* 14–113 (1978).

2. It is notable that Mr. Justice Story observed, albeit in a different context, that the question "[w]hether . . . prisoners, who are jointly indicted, can, against their wishes, be tried separately, does not admit of a doubt." *United States v. Marchant & Colson*, 25 U.S. (12 Wheat.) 480, 482, 6 L.Ed. 700 (1827).

try first of the benefit of certain witnesses. Thus, that case may be said to have been grounded in the right of the defendant to call witnesses in its behalf: a right that is complementary to that of the Government to call witnesses, as it is trying to do here.

It is true that Barrientos and Karasik, who have steadfastly asserted their rights to a speedy trial, will, as a result of a severance, be delayed in the vindication of those rights until the completion of the trial of Grullon and Mejia.[3] But that delay is unlikely to be more than some three weeks. This deprivation, while not inconsequential, does not seem commensurate with the Government's ground for severance.

It is for the foregoing reasons that I have entered an order severing the trial of Barrientos and Karasik from the trial of Grullon and Mejia, the trial of the former to follow the trial of the latter.

---

**3.** Since Barrientos and Karasik are at large on bail, while Grullon and Mejia are not, it seems preferable to give priority to the trial of Grullon and Mejia.