UNITED STATES of America

v.

Milton E. McGREGOR, Thomas E. Coker, Larry P. Means, James E. Preuitt, Harri Anne H. Smith, Jarrell W. Walker, Jr., and Joseph R. Crosby.

Criminal Action No. 2:10cr186–MHT.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 9, 2011.

Michael Kendall Day, Peter J. Ainsworth, Barak Cohen, Brenda K. Morris, John Luman Smith, U.S. Department of Justice, Edward T. Kang, Emily Rae Woods, Justin V. Shur, Marquest J. Meeks, U.S. Department of Justice, Public Integrity Section, Eric Olshan, United States Department of Justice, Public Integrity Section, Criminal Division, Washington, DC, Andrew O. Schiff, Louis V. Franklin, Sr., Stephen P. Feaga, United States Attorney's Office, Montgomery, AL, for United States of America.

Joseph Cleodus Espy, III, Benjamin Joseph Espy, William Martin Espy, Melton Espy & Williams, PC, Ashley Nicole Penhale, Clayton Rushing Tartt, James David Martin, Robert David Segall, Shannon Lynn Holliday, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, Fred Sr. D. Gray, Walter Edgar McGowan, Gray Langford Sapp McGowan Gray, Gray & Nathanson PC, Tuskegee, AL, Ruth H. Whitney, InVeritas, Little Rock, AR, Samuel H. Heldman The Gardner Firm, Washington, DC, for Milton E. McGregor.

David Jerome Harrison, Attorney at Law, Geneva, AL, Anil Ashok Mujumdar, Gordon Douglas Jones, Haskell Slaughter Young & Rediker, LLC, Thomas Julian Butler, Maynard Cooper & Gale, Birmingham, AL, Jeremy S. Walker, Haskell Slaughter Young & Gallion, LLC, Montgomery, AL, Sandra Payne Hagood, La Jolla, CA, for Ronald E. Gilley.

Stewart Davidson McKnight, III, Baxley, Dillard, McKnight & James, Joel Evan Dillard, Baxley, Dillard, Dauphin McKnight & Barclift, William Joseph Baxley, Baxley, Dillard, Dauphin, McKnight & James, Birmingham, AL, for Thomas E. Coker.

Anthony Aaron Joseph, Maynard, Cooper & Gale, PC, Samuel Holley Franklin, Jackson R Sharman, III, Jeffrey P. Doss, Lightfoot Franklin & White LLC, Birmingham, AL, James P. Judkins, Larry Dean Simpson, Judkins, Simpson, High & Schulte, Tallahassee, FL, for Robert B. Geddie, Jr.

Brett Michael Bloomston, Joseph James Basgier, III, Bloomston & Basgier, Birmingham, AL, for Jarrod D. Massey.

William N. Clark, Glory R. McLaughlin, Stephen Wesley Shaw, William Hayes Mills, Redden, Mills & Clark, LLP, Birmingham, AL, for Larry P. Means.

Ronald Wayne Wise, Law Office of Ronald W. Wise, Montgomery, AL, for James E. Preuitt.

Henry Lewis Gillis, Tyrone Carlton Means, Thomas Means Gillis & Seay PC, John Mark Englehart, Englehart Law Offices, Montgomery, AL, for Quinton T. Ross, Jr.

James Woodfin Parkman, III, Joshua Logan McKeown, Richard Martin Adams, William Calvin White, II, Parkman, Adams & White, LLC, Birmingham, AL, for Harri Anne H. Smith.

Susan Graham James, Denise Arden Simmons, Martha Geron Gadd, Susan G. James & Associates, Jeffery Clyde Duffey, Law Office of Jeffery C. Duffey, Montgomery, AL, for Jarrell W. Walker, Jr.

Thomas Martele Goggans, Attorney at Law, Montgomery, AL, for Joseph R. Crosby.

## OPINION AND ORDER

MYRON H. THOMPSON, District Judge.

Following a nine-week trial and a week of deliberations, a jury returned 91 not-guilty verdicts and 33 unresolved counts in this complex public-corruption case. Two defendants—Robert B. Geddie, Jr. and Quinton T. Ross, Jr.—were acquitted entirely. The government has elected to retry the remaining seven defendants on all outstanding counts.

The government now moves to sever the case into three parts. The first retrial would proceed against defendants Milton E. McGregor and Joseph R. Crosby. The second retrial would be against defendant Harri Anne H. Smith. The government would then retry defendants Thomas E. Coker, Jarrell W. Walker, Jr., Larry P. Means, and James E. Preuitt. The defendants, with the exception of Coker, oppose severance.

As the government acknowledged before the first trial, "duplicative efforts are unwarranted here." Gov't.'s Resp. (Doc. No. 546) at 7. Triplicate retrials would be an even greater waste of judicial resources. For the reasons that follow, the government's motion for severance will be denied.

## I. BACKGROUND

The court is now confronted with a role reversal. In pretrial proceedings, six defendants repeatedly moved for severance on grounds of alleged prejudice or because they sought a speedier trial than other co-defendants. Defs.' Mots. to Sev. (Doc. Nos. 362, 414, 465, 477, 504 & 519). The government uniformly opposed these motions. *E.g.*, Gov't.'s Resp. (Doc. No. 546).

The government refuted the defendants' claims of prejudice by relying on the strong presumption for joint trials in conspiracy cases. Gov't.'s Resp. (Doc. No. 282) at 6 (citing *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), and *United States v. Browne,* 505 F.3d 1229 (11th Cir.2007)). Emphasizing that the charges would be "proven with a single set of recorded conversations, documents, and witness testimony," the government argued that the "defendants should be tried together, in a single trial that will ensure effective use of judicial resources." *Id.* As the government recognized, "severance of defendants McGregor, Smith, Geddie, and Crosby ... would waste judicial resources by forcing the Court to adjudicate two highly similar, overlapping, and lengthy trials." Gov't.'s Resp. (Doc. No. 546) at 7.

Judicial efficiency—for the benefit of the court, the parties, the attorneys, and the public—was a consistent theme of the pretrial arguments over severance. The logistical burdens associated with a trial of this magnitude came as no surprise to the government. The sheer number of lawyers and defendants necessitated the temporary remodeling of a courtroom and the creation of an overflow room for the public and press. During a discussion about the difficulties of trying all of the defendants—then a total of 11—in the same courtroom, the government commented that a joint trial is "far more practical than trying two or three times the same case." Conf. Trans. (Doc. No. 289) at 41. And, in response to a question about a separate trial for Smith, the government answered that severance "would be a waste of the Court's resources." *Id.* at 40.

This court denied the defendants' motions for severance, finding the defendants' fears of prejudice and the logistical hurdles of a joint trial were outweighed by the presumption of a joint trial. *United States v. McGregor,* 2011 WL 798414 (M.D.Ala. 2011) (Thompson, J.). The case proceeded to trial in June 2010, lasting ten weeks from voir dire to verdict.

The case as it now stands is very different from its original incarnation. Two defendants pled guilty prior to the first trial, and the jury acquitted two defendants on all counts. After 91 not-guilty verdicts, the jury has streamlined this case substantially. The jury acquitted on the overwhelming majority of honest-services charges. All but one of the remaining defendants are charged with conspiracy. The charges against McGregor represent nearly half of the remaining counts.

## II. THE GOVERNMENT'S PROPOSED SEVERANCE

After a lengthy trial and a hung jury on a minority of charges, the government has had a change of heart—or strategy. Pointing to the lengthy cross-examinations and the volume of evidence, the government now believes the jury was overwhelmed by the trial and that severance is appropriate.

The government contends that its tripartite severance proposal is grounded on a theory of the evidence that maximizes judicial efficiency. Arg. Trans. (Doc. No. 1769) at 49 (arguing that tripartite severance is efficient because of "three discrete fact patterns"). According to the government, the trial against McGregor and Crosby "would focus primarily on defendant McGregor's alleged conduct with respect to Scott Beason and Barry Mask, as well as his $ 3,000 payments to Crosby." Gov't.'s Mot. to Sev. (Doc. No. 1697) at 3. The government estimates that this first trial would only take two to three weeks. *Id.* Smith's trial would "focus on her relationship with [co-defendant Ronnie] Gilley, including his funding of her campaigns, as well as Smith's alleged efforts to bribe Steven French." *Id.* Finally, the third trial would focus on the alleged bribing of Means and Preuitt by Coker, Walker, and McGregor. *Id.* at 3–4.

## III. STANDARD FOR SEVERANCE

■ As the Eleventh Circuit Court of Appeals recently explained, "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Lopez,* 649 F.3d 1222, 1233 (11th Cir.2011). Accordingly, "the rule about joint trials is that 'defendants who are indicted together are usually tried together.'" *Id.* at 1234 (quoting *Browne,* 505 F.3d at 1268). And, as here, that "rule is even more pronounced in conspiracy cases where the refrain is that 'defendants charged with a common conspiracy should be tried together.'" *Id.* (quoting *United States v. Beale,* 921 F.2d 1412, 1428 (11th Cir.1991)).

■ Under Federal Rule of Criminal Procedure 14(a), "If the joinder of ... defendants in an indictment ... appears to prejudice a defendant or the government, the court may ... sever the defendants' trials, or provide any other relief that justice requires." Given this strong policy preference for joinder, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a *specific trial right of one of the defendants,* or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933 (emphasis added).

As *Zafiro's* standard implies, most requests for severance are made by defendants. This is unsurprising, given that the prosecution fashions the indictment. But this case is rare not only because the government is requesting a severance but also because the government has moved for severance after the first trial ended in acquittals and unresolved verdicts. In

fact, no party has cited—and the court has been unable to find—any case where the government received a severance because of a hung jury.

Perhaps because of its rarity, there is no clear standard for determining whether to grant the government's motion to sever. *See Garris v. United States,* 418 F.2d 467, 469 (D.C.Cir.1969) (commenting on the "differences in approach as to the quantum of burden on the government" when it requests a severance).

The Eighth Circuit Court of Appeals, for example, has held that the standard for severance should not depend on the identity of the party that requests it. *United States v. Clay,* 579 F.3d 919, 928 (8th Cir.2009) (noting that "the policy preference for joinder requires the district court to find prejudice to the moving party should the motion not be granted"). By contrast, some courts have ruled that the government should be held to a higher standard when seeking a severance. *E.g., United States v. Cappello,* 209 F.Supp. 959, 960 (E.D.N.Y.1962) (Bartels, J.) (requiring a "strong showing of prejudice").

Other courts have given the prosecution the benefit of the doubt, crediting the government's "interest in severance [as] an appropriate pursuit of a legitimate prosecutorial end." *United States v. Grullon,* 482 F.Supp. 429, 431 (E.D.Pa.1979) (Pollak, J.); *see also Moore's Federal Practice 3d* § 614.07. Some judges have even questioned whether defendants have standing to challenge a motion to sever. *E.g., United States v. Bronson,* 145 F.2d 939, 943 (2d Cir.1944) (Hand, J.) ("No accused person has any recognizable interest in being tried with another, accused with him, though he often has an interest in not being so tried.").

■ Despite disagreement over the government's burden in moving for severance, it is undisputed that this court has substantial discretion in granting or denying a severance. *See United States v. Ramirez,* 426 F.3d 1344, 1352 (11th Cir. 2005) (abuse of discretion standard). Perhaps most significantly, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro,* 506 U.S. at 538–39, 113 S.Ct. 933. Because the court finds that severance should not be granted under any standard and regardless as to whether a defendant has standing to challenge severance, the court need not reach the thorny Rule 14 issues of what burden, if any, the government bears in moving for a severance and whether a defendant has standing to challenge severance.

## IV. DISCUSSION

The government makes three arguments for severance: prejudice, efficiency, and jury confusion.

■ First, the government contends that it is prejudiced by the exclusion of Joshua Blades's testimony about a conversation between himself and Preuitt during which Preuitt claimed that Smith had passed him a note with a dollar figure written on it while he was on the phone with co-defendant Ronnie Gilley. The government's brief alludes to a violation under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as the reason why Blades's testimony was excluded at the first trial. If the testimony had been excluded on *Bruton* grounds, the government would be prejudiced in a joint trial and severance may be warranted. Gov't.'s Mot. to Sev. (Doc. No. 1697) at 7–8.

But as this court made clear during the first trial, Blades's testimony was excluded because Preuitt's statement was not made in furtherance of the conspiracy. The court did not reach the *Bruton* question. Trial Trans. (Doc. No. 1621) at 132 ("The

court finds that the statement by Senator Preuitt was not in furtherance of the conspiracy. In fact, it was contrary to it. Directly contrary to it. . . . So I don't have to reach the *Bruton* issue."). Indeed, the government argued during the first trial that Blades would present "non-testimonial" evidence as defined by the *Crawford* line of cases. Gov't.'s Response (Doc. No. 1509) at 1 ("[T]he Government submits that Blades' testimony raises no Confrontation Clause problems and is admissible against all defendants."); *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (noting that "an accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not").

The court agrees with the government's original position that Preuitt's comments to a political acquaintance are "non-testimonial" and, therefore, do not trigger the Confrontation Clause's protections. At the oral argument for the motion to sever, the government conceded that there is no *Bruton* violation regarding the admission of Blades's testimony. Arg. Trans. (Doc. No. 1769) at 43. Because there is no *Bruton* problem, the government's argument that it is prejudiced by the exclusion of Blades's testimony must fail.

Second, the government argues that three severed trials would "result in a net reduction in the amount of trial time compared to a single trial involving all defendants." Gov't.'s Mot. to Sev. (Doc. No. 1697) at 9. By reducing the number of defendants in each trial, the government believes that the amount of witnesses and the time spent on cross-examination would be significantly curtailed.

The court finds the government's efficiency arguments unrealistic. It is difficult to imagine a scenario in which three retrials would take less time than the original, ten-week trial.

Three voir dires would add considerable time to each trial. At the first trial, voir dire lasted a week. This case has attracted significant media attention in Alabama, and each subsequent retrial would compound the difficulties of selecting jurors who have not formed an opinion. And because the length of trials is always uncertain, buffer time would have to be scheduled between trials to avoid any conflict. Three separate trials, therefore, would necessitate at least three weeks of jury selection.

The government also overlooks the dynamics of cross-examination at the first trial, where McGregor's attorneys carried the lion's share of the questioning. The other defendants' attorneys could rely on that cross-examination and could therefore avoid repetitive questioning. If the trial were severed, the same line of cross-examination would have to be done three times. Given that cross-examination of some witnesses lasted a week, this would add weeks to the net trial time.

The government submits that it may not call all witnesses in each retrial. Although the government may not intend to call certain witnesses in a severed retrial, the defendants may choose to do so, thereby lengthening each trial. In fact, Preuitt's attorney promised to call all of the major government witnesses from the first trial if a severance was granted. Arg. Trans. (Doc. No. 1769) at 76.

Finally, the government contends that the risk of jury confusion "is not merely speculative—it is real." Gov't.'s Mot. to Sev. (Doc. No. 1697) at 5. The government argues that the sheer volume of evidence, counts, defendants, and wiretapped recordings prevented the jury from reaching unanimous verdicts on all counts. But the government's argument hinges on a flawed premise.

There is simply no evidence in this case that the jury was confused. Indeed, the

jury agreed on the vast majority of counts; it unanimously found that the government failed to meet its burden on 91 counts. It is the jury's *result* that appears to bother the government, not a concern about confusion.

The court, therefore, has strong reservations about the government's motive in requesting a severance. A request for severance by the government is rare, but a request after a hung jury appears to be unprecedented. The court assumes that the government would have provided an example of such an extraordinary request being granted if it existed.

At oral argument, the court asked the government if it would be seeking a severance if the jury had returned 91 *guilty* verdicts and 33 unresolved counts. After a dramatic pause, the government was unable to provide a definitive answer. Arg. Trans. (Doc. No. 1769) at 12. The government was also unreceptive to a proposed severance of Coker (who did not oppose the motion) and Preuitt (the subject of the government's prejudice argument). *Id.* at 47–49.

To be sure, the government argues that it is interested in "process" and that its proposed severance maximizes judicial efficiency. *Id.* at 5. The court cannot help but sense that the government's efficiency arguments are manufactured. The ease and quickness with which the government abandoned its *Bruton* argument is also telling.

The real motive behind the severance request appears to be that the government believes convictions are more likely in three separate retrials. Rather than confront a seven-defendant retrial, the government wants to cherry-pick the defendants. The government's current position is particularly worrisome given its staunch opposition to severance before the first trial.

 As the government recognized prior to the first trial, severance is not required merely because a defendant believes he has "a better chance of acquittal if tried separately." Gov't.'s Resp. (Doc. No. 635) at 9. The same should be true of the government's belief about its chances of conviction: Severance is not required merely because the government believes it has a better chance of conviction if the defendants are tried separately.

\* \* \*

Accordingly, it is ORDERED that the government's motion for severance (Doc. No. 1697) is denied.