**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**Craig Elliot JOHNSON, Defendant and Appellant.**

**Cr. No. 473.**

Supreme Court of North Dakota.

March 27, 1974.

Wegner, Fraase & Cooke, Fargo, for defendant and appellant.

John O. Garaas, State's Atty., and Mervin Nordeng, Asst. State's Atty., Fargo, for plaintiff and appellee.

PAULSON, Judge.

This is an appeal by the defendant, Craig Elliot Johnson, from a verdict of guilty and from an order denying his motion for a new trial by the Cass County Court of Increased Jurisdiction.

On October 18, 1973, after a jury trial in which the State relied entirely on the testimony of Officer Lyle Marchus of the North Dakota Highway Patrol, Mr. Johnson was convicted of operating a motor vehicle without due care in violation of § 39–09–01 of the North Dakota Century Code. The charge arose as the result of a one-car accident which occurred on June 7, 1973, three and one-half miles north of Buffalo, on North Dakota Highway No. 38. The physical evidence showed that the car involved had left the paved road, gone into the ditch, and traveled approximately 1,000 feet in the ditch before striking an approach; after which the car traveled for another 60 feet before coming to rest.

Section 39–09–01, N.D.C.C., as in effect at the time of the alleged commission of the offense, provided:

"Any person driving a vehicle upon a highway shall drive the same in a careful and prudent manner, having due regard to the traffic, surface, and width of the highway and other conditions then existing, and shall give such warnings as are reasonably necessary for safe operation under the circumstances. No person shall drive any vehicle upon a highway in a manner to endanger the life, limb, or property of any person."

In order to secure a conviction for violation of § 39–09–01, N.D.C.C., it is necessary that the State introduce evidence to prove beyond a reasonable doubt that the accused not only was driving a motor vehicle upon a highway in this State, but also that he was driving in a manner which was not careful and prudent under the circumstances.

Mr. Johnson argues that the verdict is not supported by the evidence and that the trial court therefore erred in denying his motion for a new trial.

The scope of our review in cases where the trial court has denied the defendant's motion for a new trial based on the insufficiency of the evidence is well established by prior decisions of this court.

In State v. Smith, 153 N.W.2d 691 (N.D.1967), in paragraph 1 of the syllabus, we held:

"A motion for new trial on the ground of insufficiency of the evidence is addressed to the trial court's sound discretion. Such court's determination with respect to the sufficiency of the evidence will not be disturbed on appeal unless an abuse of discretion is shown."

State v. Anderson, 172 N.W.2d 597 (N.D. 1969), ¶ 5 of Syllabus.

The first issue is, therefore, whether the State has proved by the evidence adduced that Mr. Johnson was driving the motor vehicle in question when the accident occurred.

The record indicates no direct evidence that Mr. Johnson was driving such motor vehicle. Instead, the State relies entirely on circumstantial evidence; that is, the testimony of Officer Marchus.

We have previously held that circumstantial evidence alone may be sufficient to justify a conviction. In State v.

Emmil, 172 N.W.2d 589, 591 (N.D.1969), we set forth the guidelines relevant to the sufficiency of circumstantial evidence, wherein we stated:

" . . . The law does not require that every fact going to make up a case be proved by eyewitnesses or by direct evidence. In criminal as well as in civil cases, issues may, generally speaking, be established · by circumstantial evidence. 30 Am.Jur.2d, Evidence Sec. 1091, p. 248.

"This court has held that there is no legal distinction, so far as weight and effect to be given is concerned, between circumstantial evidence and direct evidence. State v. Foster, 14 N.D. 561, 105 N.W. 938 (1905).

"Thus circumstantial evidence alone may justify a conviction, provided it is of such probative force as to enable the trier of facts to say that the defendant is guilty beyond a reasonable doubt. . . . "

The following is the evidence adduced at the trial, from which evidence the jury determined whether Mr. Johnson was the driver of the motor vehicle in question:

Officer Marchus testified that at about eleven or eleven-thirty o'clock on the morning of June 7, 1973, Mr. Johnson's mother appeared at the highway patrol office. After a conversation with her inside the office, they went outside, where Officer Marchus talked with Mr. Johnson. Officer Marchus testified as follows concerning his conversation with Mr. Johnson:

"Q (Mr. Nordeng continuing) Okay. After the lady came to your office, Officer Marchus, did you go outside after that?

"A Yes, I did.

"Q Did you see the defendant, Craig Johnson, at that time?

"A Yes, I did.

"Q Where was he?

"A Laying in the back seat of the car.

"Q And in what condition?

"A Well, he was bruised and had had medical attention.

"Q Were you able to have a conversation with him?

"A Very briefly.

"Q What conversation did you have with him?

"A Regarding the accident.

"Q Do you recall what he said?

"A No, I don't."

Officer Marchus also testified that he then had a conversation with Mr. Johnson's mother. His testimony with respect to that conversation is as follows:

"Q Did you have a conversation with the mother at that time in the presence of the defendant?

"A That I would be out there, yes, I did.

"Q What was that conversation?

"A That I would be out to their home later in the day and also to the scene of the accident to investigate there, the accident that the defendant had been in.

"Q There was a conversation involving the accident that the defendant had been in, is that correct?

"A Yes.

"Q In the· presence of the defendant?

"A Yes.

"Q Do you know exactly what was said?

"A Well, the accident was discovered about daybreak and that they didn't feel it was necessary to call or didn't call and they brought the de-

fendant in for medical attention and then stopped by the office on their way home."

Later that day, Officer Marchus investigated the scene of the accident and determined that the motor vehicle involved was registered to Mr. Johnson's father. The patrolman testified as follows with respect to the accident report which he .filed:

"Q  Okay. Did you make an accident report on this accident?

"A  Yes, I did.

"Q  Who were the people involved in that accident report?

"A  Craig Johnson.

"Q  Anyone else?

"A  No."

Officer Marchus further testified:

"Q  And so then when you were at the home, did you at that time issue a citation?

"A  Yes.

"Q  Did you give it personally to the defendant?

"A  No, I did not.

"Q  Why not?

"A  I told the party I was talking to that I didn't care to bother the defendant at that time if he was in such a condition that he should be in bed.

"Q  Let's go back now to the scene of the accident again and the motor— the motor vehicle there. Now, you testified that the defendant had bruise marks, is that correct?

"A  Yes.

"Q  Did you make—make any observations on the motor vehicle indicating that the defendant had struck the windshield or anything like this?

"A  No, I did not.

"Q  There was no indication that he had been injured or you could determine his injuries?

"A  I don't know what his injuries were other than those I could see, namely, his lacerations on his face, bruises on his face."

Does this evidence constitute evidence from which a jury could reasonably infer that Mr. Johnson was driving the motor vehicle involved in the accident?

A similar issue was before the Supreme Court of Iowa in State v. Myers, 253 Iowa 271, 111 N.W.2d 660 (1961). In Myers, the defendant was charged with the offense of failing to have a motor vehicle under control and failing to reduce its speed to a reasonable rate while approaching and traversing a bridge on a public highway. The Iowa Supreme Court summarized the evidence presented by the State, as follows:

"  .  .  .  The state's evidence shows that on August 17, 1960, Walter Tharp, the sheriff of Mahaska County, went to the scene of an accident in that county. He found a bridge 'broken down' and a car on the floor of the bridge in the creek. It was a Plymouth automobile registered in the name of defendant's father. The sheriff observed car tracks which had left the roadway some 165 feet from the bridge and remained on the shoulder up to the bridge. There was white paint on the bridge and he saw white paint on the front end of the car.

"Another witness testified that he saw the car lying on the collapsed portion of the bridge and 'then I turned around and went back and found this man. I met him going down there limping along the road. * * * So when I came back he was walking toward Hardemans. I asked if anyone was with him and he said "no, he was alone." We went to Mr. Hardeman's.' Hardeman lived about one-half mile from the scene of the accident. The witness then said he took the defendant to the hospital. 'He was

in very bad shape. He couldn't talk much.'" *Myers, supra* 111 N.W.2d at 662.

In discussing the sufficiency of the evidence, the Iowa Supreme Court stated, at pages 662–663:

". . . But any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must generate something more than suspicion, or speculation, or conjecture. 'We cannot permit a verdict of guilty to stand where there is absence of proof of any of the essential elements of the crime charged.'"

". . . We may suspect that, in view of the defendant's injured condition and the fact that the automobile was registered in his father's name that he may have been an occupant when it was wrecked by striking the bridge; but even this would be no more than suspicion. Still less is there any proof that he had operated the car at the time of the accident; so far as the record shows it may have been long enough before the witnesses came on the scene so that other occupants could have departed. The defendant said he was alone, and so he was, when he was taken into the witness' car. There are too many gaps in the state's case, too many unproven material matters, to permit the conviction to stand. Mere suspicion of guilt created by the evidence, if it goes no farther, is not enough to sustain a conviction."

The Iowa court then reversed the jury's guilty verdict in the *Myers* case.

■■ In view of the record, we believe that no evidence was adduced at the trial by the State to prove that Mr. Johnson was the driver of the motor vehicle involved in the accident in question or to justify an inference of guilt, and that the verdict must be set aside.

Inasmuch as we have determined that the verdict must be set aside because the State has failed to prove an essential element of the crime charged, to wit: that

Mr. Johnson was the driver of the motor vehicle involved in the accident in question, we need not discuss the remaining contentions advanced by Mr. Johnson. See State v. Kaloustian, 212 N.W.2d 843 (N. D.1973).

The verdict of guilty is set aside and the order denying the motion for a new trial is reversed.

ERICKSTAD, C. J., and TEIGEN, VOGEL and KNUDSON, JJ., concur.