STATE of North Dakota, Plaintiff
and Appellee,

v.

Gerald HILSMAN, Defendant
and Appellant.

Cr. No. 887.

Supreme Court of North Dakota.

April 14, 1983.

Tom P. Slorby, States Atty., Minot, for plaintiff and appellee.

Edward J. Bosch, Minot, for defendant and appellant.

ERICKSTAD, Chief Justice.

Defendant/Appellant, Gerald Hilsman, is appealing from a jury conviction of two counts of robbery and from a judgment entered in accordance therewith by the District Court of Ward County. For the reasons hereinafter stated, we affirm.

On appeal, Hilsman raises four issues. His primary argument is twofold and concerns the trial court's evidentiary rulings. First, he attacks the trial court's restriction of defense counsel's cross-examination of the State's chief witness, Aaron Stein. Secondly, he contends the trial court erred by precluding defense counsel from attempting to impeach the credibility of Brian Stein, an individual who did not testify in Hilsman's trial.

At Hilsman's trial, witnesses for the State identified a black plastic toy gun, which had a piece of blue tape around its barrel, and a nylon stocking mask as being items utilized by the robber. The brand label on the nylon mask was that of L'eggs. Through the testimony of Aaron Stein, the State linked these items to Hilsman.[1] Specifically, Aaron Stein testified that while he was living with Hilsman in early November, 1981, he saw the same toy gun and a pair of nylons in the defendant's cowboy hat. Stein further stated that simultaneous with his observation of the toy gun and nylons he found an empty L'eggs container in Hilsman's duffle bag.

Aaron Stein was the principal witness for the State without whose testimony a conviction would not have been likely. Hence,

attacking Stein's credibility was an essential element of Hilsman's defense. Nevertheless, we must determine whether or not defense counsel's intended cross-examination of Stein was a permissible method in which to test his credibility. The specific question asked by defense counsel on cross-examination was:

"... you were accused of stealing a shotgun, weren't you?"

It is undisputed that there was no formal charge or conviction with regard to this incident.

■ Under Rule 608(b), N.D.R.Ev.,[2] a trial court may, in its discretion, allow a witness to be impeached through cross-examination with regard to specific instances of conduct not resulting in a conviction if the proffered conduct is probative of a witness's character for truthfulness or untruthfulness. *United States v. Young,* 567 F.2d 799 (8th Cir.1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1978); 3 Weinstein's Evidence ¶ 608[5] (1982). In the case at bar, whether or not Stein was accused of theft was not probative of his veracity or honesty. *See,* 3 Weinstein's Evidence ¶ 608[5], pp. 608-32—608-33 (1982). Furthermore, it is well-established that mere accusations of a crime cannot be used to impeach the credibility of a witness. *State v. Glavkee,* 138 N.W.2d 663, 666 (N.D. 1965); *United States v. Kirk,* 496 F.2d 947, 949 (8th Cir.1974); 98 C.J.S. Witnesses § 515 (1957). Hence, we believe the trial court did not abuse its discretion by curtailing defense counsel's attempt to destroy Stein's credibility by cross-examining him with regard to his being accused of stealing a shotgun.

■ Hilsman also contends that the trial court erroneously prohibited him from sub-

---

1. From approximately the end of July until the 19th or 20th of November, 1981, Hilsman lived with the Stein brothers, Aaron and Brian.

2. Rule 608, N.D.R.Ev., reads in pertinent part:
   *"(b) Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. However, in the discretion of the court, if probative of truthfulness or untruthfulness, they may be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

poenaing the sheriff of Williams County who would have allegedly testified that Brian Stein was fired as a deputy sheriff because he committed a theft. Rule 608(b), N.D.R.Ev., permits a witness's credibility to be attacked through cross-examination with regard to specific instances of conduct. However, in this instance, defense counsel was attempting to impeach, through the use of extrinsic evidence, the credibility of Brian Stein, an individual who was not a witness for either the State or the defense. Accordingly, we conclude the trial court did not abuse its discretion by precluding defense counsel from attempting to impeach the credibility of Brian Stein.

Hilsman's third contention is that the State's reference to a polygraph exam in its closing argument constitutes reversible error.[3] When the prosecutor mentioned the word "polygraph" in his closing argument, it is evident that he only intended to refer to the jury's instructions with regard to defense counsel's statement in the presence of the jury that "he [Hilsman] agreed to take a lie detector test."

Procedurally, this issue arises as a result of the trial court's ruling made on a motion for mistrial following a reference by the prosecutor to the polygraph. After consideration of the motion in chambers, the court denied the motion, finding the reference not prejudicial.[4]

A trial court has discretionary control over the scope of counsel's opening and closing arguments; therefore, we will not reverse a trial court on the basis that counsel's arguments were excessive in scope unless a clear abuse of discretion is shown. *State v. Mehralian,* 301 N.W.2d 409, 418 (N.D.1981); *State v. Henderson,* 156 N.W.2d 700, 708 (N.D.1968). Furthermore, counsel does not exceed the permissible scope of his closing argument by referring to instructions that the court intends to give the jury. *State v. Lenarchick,* 247 N.W.2d 80, 98, 74 Wis.2d 425 (1976); *Shelby v. State,* 281 N.E.2d 885, 887, 258 Ind. 439, 442 (1972); *State v. Davis,* 333 P.2d 1089, 1091, 53 Wash.2d 387, 391 (1959), *cert. denied,* 359 U.S. 981, 79 S.Ct. 902, 3 L.Ed.2d 930 (1959); 23A C.J.S. Criminal Law § 1090 (1961). In light of the circumstances, we conclude that the trial court did not abuse its discretion in denying the motion for mistrial.

In his fourth and final argument, Hilsman attacks the sufficiency of the evidence. He claims that the State's evidence against him is entirely circumstantial and does not sustain the jury verdict of guilty beyond a reasonable doubt.

The State concedes that its case against Hilsman is based totally upon circumstantial evidence. However, circumstantial evidence alone may justify a con-

---

**3.** Defense counsel, Mr. Bosch, objected to the following portion of Mr. Slorby's closing argument:

"MR. SLORBY: ... A number of statements have been made by counsel for the defendant, Mr. Bosch, and probably by myself as well during the course of this trial.... [B]oth Mr. Bosch and I advised you that statements made by counsel are not evidence and that the only evidence is what comes through the witness stand. And both Mr. Bosch and I told you you were not to speculate or enter into some form of conjecture to come up with other evidence that didn't come this way.... [A] couple of the statements made by Mr. Bosch I want to touch on in light of this. Mr. Bosch made reference to a polygraph exam, a lie detector test.
"MR. BOSCH: Your Honor, I will object to this.
"THE COURT: Sustained. The instructions will cover that.

"MR. SLORBY: I believe the Court will instruct you on this matter."

**4.** "THE COURT: The objection you made, Mr. Bosch, was sustained. The jury has instructions about the effect of sustaining or overruling objections. I am not so sure that maybe I didn't err by sustaining the objection knowing that there is going to be further remarks on the polygraph, namely the instructions, but I wanted to curtail any further reference to the polygraph just to avoid it getting out of hand. We have enough of it thus far. Any little bit is too much in a criminal case. And so I don't feel any prejudicial error was committed, Mr. Bosch. I think maybe I made a mistake in sustaining the objection.
"MR. BOSCH: I probably shouldn't have made the objection. I probably hurt myself in doing it."

viction if it is of such probative force as to enable the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *State v. Olson,* 290 N.W.2d 664, 671 (N.D.1980); *State v. Erickson,* 231 N.W.2d 758, 765 (N.D.1975); *State v. Johnson,* 216 N.W.2d 704, 706 (N.D.1974). Furthermore, at the trial level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but on the appellate court level the role of the Supreme Court is merely to review the record to determine if there is competent evidence that allows the jury to draw an inference reasonably tending to prove guilt, and fairly warranting a conviction. *State v. McMorrow,* 286 N.W.2d 284, 287 (N.D.1979); *State v. Schuler,* 243 N.W.2d 367, 371 (N.D. 1976); *State v. Allen,* 237 N.W.2d 154, 161 (N.D.1975).

■ Upon scrutinizing the record, we have found much circumstantial evidence, all of which is consistent with Hilsman's guilt. At this time, we will briefly summarize the State's case. A person absconded with $191 from the Econ-O-Inn on November 30, 1981, and with $300 from the General Store on December 14, 1981. Witnesses described this person as wearing a plaid jacket, a dark blue or black stocking cap and a nylon mask. Officer Olson of the Minot Police Department chased this individual subsequent to the robbery of the General Store. As he was being chased, the individual stumbled and fell. Subsequent thereto, the individual eluded the police officer. Nevertheless, upon retracing the route over which he chased the apparent robber, the police officer found a small black plastic toy gun with blue tape around its barrel, a dark blue stocking cap, and a nylon mask.

On December 14, 1981, subsequent to the time of the robbery, the defendant, who was unemployed, repaid in cash a loan of $35. The defendant also purchased a money order for $210 in cash on December 15, 1981, and paid his rent of $155 in cash on December 31, 1981. According to the State's expert witness, Aaron Rash of the Crime Laboratory Division of the State Laboratories Department, the hair in the stocking cap found by the police officer possessed the same microscopic characteristics as the defendant's and thus could have a common source. The defendant also had unexplained injuries similar to those which the robber would have had as a result of the fall he took when being pursued by Officer Olson. In addition, further testimony by the State's witnesses revealed that, prior to the robberies, the defendant had possession of a pair of L'eggs nylons and a gun which resembled the gun used by the robber; that the defendant occasionally wore brown insulated coveralls as did the robber; that a plaid jacket and brown insulated work gloves were seized from the defendant's apartment and identified as being the same as those worn by the robber; and, that the defendant was of the same general physical description as the robber.

Thus, our review of the record convinces us that the jury could have reasonably concluded that Hilsman was guilty beyond a reasonable doubt. We therefore affirm.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.